# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

COMMONWEALTH vs. EMERY NUNES.

Bristol. May 3, 1999. - July 1, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Evidence,* Hearsay, Spontaneous utterance. *Practice, Criminal,* Instructions to jury, Assistance of counsel, Capital case. *Self-Defense. Homicide.*

At a murder trial, a statement of the victim was properly admissible under the spontaneous utterance exception to the rule against hearsay. [3-4]

Where, at a murder trial, the evidence did not raise an issue of self-defense, the defendant was not entitled to an instruction on manslaughter based on the use of excessive force in self-defense, and the judge was correct in declining to so instruct. [4-5]

At a murder trial, the judge's instruction to the jury on provocation did not shift the burden of proof and even if the judge's instruction on mitigation by provocation had been more expansive, the jury verdict would not have been different. [5-7]

At a murder trial, defense counsel's failure to object to three questions in a

lengthy cross-examination of the defendant requiring him to comment on the testimony of other witnesses would not have affected the jury's verdict. [7]

INDICTMENT found and returned in the Superior Court Department on November 4, 1992.

The case was tried before *Charles J. Hely*, J.

*James M. Doyle* for the defendant.

*David Keighley*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree on a theory of extreme atrocity or cruelty, the defendant, Emery Nunes, appeals. The defendant asserts that the judge erred in admitting a statement of the deceased as a spontaneous utterance. He also asserts that the judge's instructions created a substantial likelihood of a miscarriage of justice. Finally, he contends that he was denied the effective assistance of counsel at trial. The defendant asks that we use our power pursuant to G. L. c. 278, § 33E, to reduce the verdict to voluntary manslaughter. We affirm the convictions.[1] We decline to exercise our power pursuant to G. L. c. 278, § 33E, to enter a verdict of a lesser degree of guilt or to order a new trial.

1. *Facts*. The defendant does not dispute the fact that he killed his wife by stabbing her seventeen times. The defendant's claim was that, although he was criminally responsible, he lacked the ability to form malice aforethought.

We set forth the defendant's version of the facts. The defendant said he entered the family home through a window and hid. After the victim's children went to bed, he entered the bedroom. He intended to speak with the victim concerning their marital problems and ask her to seek joint marital counselling. He found the victim sitting in bed with her eyes closed. When the victim realized the defendant was in her bedroom, she asked him what he was doing there. He said that he told her that he loved her. According to the defendant, he begged the victim to talk with him. He then requested that they participate in counselling. The victim jumped up and told the defendant that he was

---

[1]The defendant was convicted of burglary, malicious destruction of property, and violating an order issued pursuant to G. L. c. 209A. He does not challenge these convictions on appeal.

crazy. He said that she pulled out a knife, which she kept in a drawer beside the bed, and told him that she intended to do what she wanted with whomever she wanted. She pointed the knife in his face and told him to leave or she would call the police. The defendant said that he then blacked out. The next thing he remembers is standing over the victim, her eyes wide open, and the sound of screaming.

2. *Spontaneous utterance.* The defendant challenges the admission of a statement of the victim under the excited utterance exception to the hearsay rule. Two days before her death, the victim arranged to meet Steven Kudzma, with whom she allegedly was having an affair. The victim and Kudzma separately went to a Dunkin' Donuts shop and parked in the parking lot. After the victim and Kudzma spoke inside his car, he left the car and entered the Dunkin' Donuts shop. From inside the shop, Kudzma saw a man approach the car and speak with the victim. Seconds later, Kudzma returned to the car. The victim was trembling, her eyes were wide open, and she had a panicked expression on her face. Kudzma asked her the identity of the man. Over objection, Kudzma testified that the victim identified the man as her husband and reported that "my husband said he's going to kill me because I'm having an affair."[2] Three other witnesses testified that the defendant told them about confronting the victim in the parking lot. The defendant also testified to his version of the incident.

The statement at issue is the victim's statement that "my husband said he's going to kill me because I'm having an affair." The defendant argues that the admission of this evidence was an abuse of discretion and that its admission deprived him of his right of confrontation protected by the Sixth and Fourteenth Amendments to the United States Constitution and by art. 12 of the Massachusetts Declaration of Rights. We do not agree.

"A statement is admissible under the spontaneous utterance exception 'if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event.' " *Commonwealth* v. *Whelton*, 428 Mass. 24, 26 (1998), quoting *Commonwealth* v. *Crawford*, 417 Mass. 358, 362

---

[2]Later that day, the victim secured a protective order against the defendant pursuant to G. L. c. 209A. When the police served the order, they found a pile of women's clothing and jewelry smoldering in the backyard.

(1994). "[A]n utterance is spontaneous if it is made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and thus it has sufficient indicia of reliability." *Commonwealth* v. *Zagranski*, 408 Mass. 278, 285 (1990). Only in clear cases of an abuse of discretion will we alter a judge's ruling of admissibility. *Whelton*, *supra*. *Crawford*, *supra*.

Kudzma said that he returned to the car immediately after the defendant spoke to the victim. The influence on the victim of her conversation with the defendant was evidenced by her trembling, wide eyes, and panicked expression. The victim's statement tended to characterize and explain her perception of her encounter with the defendant. The victim believed that the defendant intended to kill her.

The defendant contends that the statement should not have been admitted because the exciting event underlying the victim's exclamation is proved only by the statement itself.[3] We disagree. The statement itself may be taken as proof of the exciting event. See *Commonwealth* v. *Whelton*, *supra* at 27, citing *Commonwealth* v. *Alvarado*, 36 Mass. App. Ct. 604, 606 (1994). Moreover, there was additional evidence of the exciting event. Kudzma testified that he saw the defendant speaking with the victim through the shop window. The defendant told three others, all witnesses at trial, about the encounter. And the defendant himself testified that he confronted the victim in the Dunkin' Donuts parking lot. We conclude that there was no error in the admission of the statement.

3. *Jury instructions.* The defendant takes issue with two aspects of the jury instructions. He first argues that the judge should have instructed the jury that the use of excessive force in self-defense is a basis for mitigation. He also argues that the judge erred in instructing on provocation. Although the defendant submitted proposed instructions on the use of excessive force in self-defense, he did not object at the close of the charge. The defendant also did not object to the provocation instruction. We therefore assess whether the instructions resulted in a substantial likelihood of a miscarriage of justice. Under

---

[3]The defendant further argues that the statement was not an excited utterance because it was a response to a question from Kudzma. A statement may be spontaneous even if made in response to a question. See *Commonwealth* v. *Crawford*, 417 Mass. 358, 363 n.3 (1994); *Commonwealth* v. *Fuller*, 399 Mass. 678, 682-683 & n.8 (1987).

G. L. c. 278, § 33E, "a new trial is called for unless we are substantially confident that, if the error had not been made, the jury verdict would have been the same." *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998). We conclude that a new trial is not required.

The evidence did not raise an issue of self-defense. The defendant therefore was not entitled to an instruction on manslaughter based on the use of excessive force in self-defense. *Commonwealth* v. *Carrion*, 407 Mass. 263, 268 (1990). A self-defense instruction is required if the evidence, taken in the light most favorable to the defendant, raises a reasonable doubt whether "the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Souza*, 428 Mass. 478, 486 (1998), quoting *Commonwealth* v. *Torres*, 420 Mass. 479, 492 (1995).

The defendant failed to take measures to avoid physical combat before resorting to deadly force. *Commonwealth* v. *Hart*, 428 Mass. 614, 616 (1999). From the defendant's own testimony, there was no evidence that the defendant was denied a means of escape. The defendant could have retreated by leaving the bedroom, as the victim requested he do, but he did not. Moreover, once the defendant was able to wrest the knife from the victim, any right to use self-defense terminated. The defendant could not have reasonably feared imminent death or serious bodily harm once he was in possession of the knife. See *Commonwealth* v. *Pike*, 428 Mass. 393, 398 (1998). Because the defendant had no right to self-defense, the judge was correct in refusing to instruct the jury on the use of excessive force in self-defense.

The defendant's second complaint regarding the jury instructions is that the instruction on provocation diluted or shifted the burden of proof. The defendant argues that it was improper for the judge to employ "must have" and "must be" language in the instruction, which we have repeated in the margin.[4] The defendant equates the "must have" and "must be" language

---

[4]"For it to be voluntary manslaughter based on mitigation, first there *must be* a sudden transport or heat of passion. If there was a reasonable time for the

with the "finding language" we rejected in *Connolly* v. *Commonwealth*, 377 Mass. 527 (1979). Our reasoning in *Connolly* was that "instructions telling the jury that they must find or be satisfied of a proposition, which the defendant 'claims,' would readily convey to them in comprehensible lay terms that it was the defendant who was required to wield the laboring oar." *Id.* at 534.

Throughout the instructions, the judge made it clear that the Commonwealth bore the burden of proof in order to convict the defendant. At the outset, the judge told the jury that the burden of proof was on the Commonwealth to prove the charge beyond a reasonable doubt and that the defendant did not have to prove his innocence or offer any evidence. The judge proceeded to describe the crime of murder in the first and second degrees and explained that murder requires malice aforethought. The judge instructed the jury at least ten times that malice aforethought requires a killing without mitigation. The judge concluded his explanation of mitigation by stating that "[t]o find the defendant guilty of murder, either first or second degree, the burden of proof is on the Commonwealth to prove beyond a reasonable doubt the absence of mitigation . . . ."

Relying on *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998), the defendant argues that nowhere in the charge did the judge convey the idea that, if the evidence raised even the possibility that the defendant may have acted on reasonable provocation, the Commonwealth had to prove beyond a reasonable doubt that the defendant did not act on reasonable provoca-

---

passion to cool, it was not a sudden transport or heat of passion based on reasonable provocation. So the first aspect of this, there *must be* a sudden transport or heat of passion. Second, for it to be voluntary manslaughter, the sudden transport or heat of passion *must be* based on reasonable provocation. I will explain that. For the provocation to be reasonable, it *must be* such as would produce in the ordinary, reasonable person such a state of passion, anger, fear, fright, or nervous excitement as would overcome a person's capacity for reflection or restraint. The reasonable provocation *must have been* such as would cause such a reaction in an ordinary person, and it *must have* caused such a reaction in the defendant for it to be voluntary manslaughter. Finally, such a sudden transport or heat of passion on reasonable provocation *must have been* the cause of the killing for it to be voluntary manslaughter. This is what we mean by mitigation for the lesser offense of voluntary manslaughter." (Emphasis supplied.)

The provocation instruction here tracked that contained in our proposed Model Jury Instructions on Homicide (June 3, 1999), which also uses "must be" language.

tion. See *id*.[5] Although the judge did not convey that idea clearly, he did preface his explanation of mitigation by provocation by stating that, "[i]f there is evidence of mitigation, you should consider whether the defendant is guilty of the lesser offense of voluntary manslaughter." We note that the jurors' only question on the indictment charging murder was concerned with deliberate premeditation.[6] We are substantially confident that, had the *Acevedo* instruction been given, "the jury verdict would have been the same." *Commonwealth* v. *Ruddock, supra* at 292 n.3.

4. *Ineffective assistance of counsel.* The defendant argues that his counsel failed to object to a series of questions requiring him to comment on the testimony of other witnesses. The Commonwealth concedes that it was improper to ask the defendant to testify to the credibility of other witnesses. See *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 (1986). However, there were only three infractions in a cross-examination spanning over fifty pages of transcript. If the error had not been made, the jury verdict would not have been different.[7] See *Commonwealth* v. *Ruddock, supra* at 292 n.3.

5. *General Laws c. 278, § 33E.* The defendant argues that his age, his military service, his lack of a criminal record, his mental state, and his remorse afterward warrant a reduction to voluntary manslaughter. We are not a second jury. See *Commonwealth* v. *Coonan*, 428 Mass. 823, 831 (1999), and cases cited. We have reviewed the record and conclude that it does not warrant a reduction in the verdict or a new trial.

*Judgments affirmed.*

[5]This case was tried approximately three years before our decision in *Commonwealth* v. *Acevedo*, 427 Mass. 714 (1998).

[6]Although the defendant does not press the point, the Commonwealth admits that the judge's instruction that "[u]nlike murder . . . the lesser crime of voluntary manslaughter does not require proof of lack of mitigation" could be read as a misstatement of the law. We agree with the Commonwealth, however, that, when read in context, the instruction conveyed to the jurors that the Commonwealth need not disprove provocation to convict the defendant of voluntary manslaughter. We conclude that there was no substantial likelihood of a miscarriage of justice.

[7]The defendant further argues that counsel was ineffective for failing to renew his request for an instruction on the use of excessive force in self-defense and to object to the provocation instruction. Because we conclude that there was no substantial likelihood of a miscarriage of justice, we also conclude that the defendant's ineffectiveness argument must fail.