## COMMONWEALTH *vs.* SCOTT B. KING.

Franklin. November 5, 2001. - March 11, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Spontaneous utterance. *Constitutional Law,* Self-incrimination, Waiver of constitutional rights. *Waiver.*

At a hearing prior to the trial of a criminal complaint charging assault and battery, the judge did not err in denying the defendant's motion to exclude certain statements as spontaneous utterances on the ground that the victim's later recantation of the accusations rendered her utterances unreliable, where, once the foundational requirements for admission of the spontaneous utterances had been met, the judge lacked the discretion to decide that the spontaneous utterances were unreliable and thereby exclude them. [254-257]

This court remanded a criminal case for further proceedings to determine whether a witness's testimony at a voir dire hearing constituted a waiver of her privilege under the Fifth Amendment to the United States Constitution, the court stating that, if there had not been a valid waiver, the witness properly invoked the privilege at trial when questioned by defense counsel with regard to her recantation of accusations to the police immediately after the incident in question that were admitted as spontaneous utterances, and there would thus be no prejudice from the trial judge's having allowed her to invoke the privilege, but that, if there had been a waiver, it was prejudicial error to allow the witness to invoke the privilege and the defendant would be entitled to a new trial. [257-262]

COMPLAINT received and sworn to in the Greenfield Division of the District Court Department on March 14, 1998.

A motion in limine to exclude certain evidence was heard by *W. Michael Ryan,* J., and the case was heard by *Michael J. Ripps,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Paul C. Brennan* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

SOSMAN, J. Following a jury-waived trial in the District Court,

the defendant was convicted of assault and battery. The Appeals Court affirmed the judgment in a memorandum and order pursuant to its rule 1:28. *Commonwealth* v. *King*, 50 Mass. App. Ct. 1113 (2001). We granted his application for further appellate review. He contends that the victim's statements to police in the immediate aftermath of the incident should not have been admitted as spontaneous utterances because the victim's later recantation of the accusations rendered her spontaneous utterances unreliable. He also argues that the judge erroneously allowed the victim to invoke her privilege under the Fifth Amendment to the United States Constitution after she had waived that privilege by testifying at a voir dire, thus preventing him from presenting the victim's live testimony as part of his defense at trial. We find no error in the admission of the victim's spontaneous utterances. However, we agree that the judge applied an incorrect standard in concluding that the victim had not waived her Fifth Amendment rights in the course of her voir dire testimony. We therefore remand the matter for further proceedings to determine whether the victim had waived her privilege against self-incrimination.

1. *Admission of victim's spontaneous utterances.* a. *Voir dire.* Immediately prior to the start of trial, the judge conducted an evidentiary hearing on the defendant's motion to exclude the victim's statements to police. At that hearing, two police officers and the victim testified as follows.

On March 14, 1998, at approximately 3 A.M., Officer Kevin Rowell of the Greenfield police department was dispatched to a gasoline station on Bernardston Road, a few miles from the interstate highway. There he found the victim, accompanied by one Orlando Soto. The victim was crying and shaking. Officer Rowell described her as "[u]pset, excited, speaking rapidly, just blurting things out as she spoke." He detected an odor of alcohol on her breath, but characterized it as "[v]ery little, nothing major." The victim told Officer Rowell that she and the defendant had been riding in the back seat of Soto's vehicle, returning home from a nightclub in Springfield. She and the defendant were arguing. During the course of the argument, the defendant grabbed her and choked her three times. She showed Officer Rowell some red, puffy marks on her neck where the

defendant had held her. Near the gasoline station, Soto had pulled the vehicle over, at which time the victim had jumped out and run to the gasoline station. She said that the incident had occurred "just moments" before the police arrived.

Sergeant Gary Magnan arrived at the scene shortly after the victim had spoken to Officer Rowell. Officer Magnan testified that the victim was still shaking, crying and "visibly upset." He needed to calm her down and reassure her "that things were okay" before she could speak to him. The victim repeated to Sergeant Magnan essentially the same version of events she had given to Officer Rowell.[1]

The defendant then called the victim to testify. She testified that she was the defendant's former girl friend, and that she remembered the events of March 14, 1998, only "[s]lightly." She acknowledged that she had made statements to the police on that occasion, accusing the defendant of choking her, but testified that those statements were only "[p]artially" true. She testified that she was "very angry" and "very intoxicated" at the time she had spoken to the police. Some months after the incident, she had given another version, stating that the defendant had been trying to calm her down and had had to use force to restrain her and prevent her from hurting herself. She testified that that later statement was the true version of what had happened.

b. *Discussion.* A statement is admissible under the spontaneous utterance exception to the hearsay rule if the proponent shows that the statement was made under the influence of an exciting event, before the declarant had time to contrive or fabricate the statement, and that the statement tended to qualify, characterize and explain the underlying event. See *Commonwealth* v. *Nunes*, 430 Mass. 1, 3-4 (1999); *Commonwealth* v. *Whelton*, 428 Mass. 24, 26 (1998); *Commonwealth* v. *DiMonte*, 427 Mass. 233, 236, 239 (1998); *Commonwealth* v. *Brown*, 413 Mass. 693, 695-696 (1992); *Commonwealth* v.

[1]An hour or two later, the victim prepared an affidavit in support of a request for a protective order against the defendant. That affidavit was consistent with the statements given to the officers at the scene. See note 5, *infra.* The affidavit was admitted at trial on other grounds, not as a spontaneous utterance.

*Zagranski*, 408 Mass. 278, 285 (1990). The underlying exciting event may be proved by the excited utterance itself. *Commonwealth* v. *Nunes*, *supra* at 4. As with any other witness, the declarant must have personal knowledge of the event in question, and must be competent. See *Commonwealth* v. *Crawford*, 417 Mass. 358, 362-363 (1994), *S.C.*, 430 Mass. 683 (2000), and cases cited.

In the present case, the tests for admitting the victim's statements as excited utterances were plainly met. She was still under the influence of a very recent traumatic event, and her statements explained that event. She had personally observed the event and, although she had apparently been drinking, there was nothing to suggest a level of intoxication that rendered her incompetent.

The defendant argued that the victim's statements to the police should not be admitted as spontaneous utterances because, in light of her later recantation, they were not "reliable." The judge, finding that the requirements for admission of a spontaneous utterance had been met, denied the motion. He explained that, once the foundational requirements had been met, he did not have discretion to decide that the spontaneous utterances were unreliable and thereby exclude them.

The judge was correct. A judge has broad discretion to determine whether the foundational requirements of the exception have been met. See *Commonwealth* v. *Whelton*, *supra* at 26; *Commonwealth* v. *Grant*, 418 Mass. 76, 81 (1994), quoting *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960); *Commonwealth* v. *Zagranski*, *supra*. Thus, a judge's determination that, in light of the timing and all other surrounding circumstances, the declarant was still under the influence of the exciting event will only be disturbed for abuse of discretion. Compare *Commonwealth* v. *DiMonte*, *supra* at 236-240 (judge abused discretion in admitting facsimile transmission as spontaneous utterance where transmission was sent more than eight hours after alleged assault and contained unrelated information about concert schedules), with *Commonwealth* v. *Crawford*, *supra* at 360-363 (child's statement made five hours after mother's murder but at child's "first safe opportunity" to speak properly admitted as spontaneous utterance).

Our recognition of that broad discretion to determine whether the prerequisites for the exception are met does not suggest that a trial judge has the authority to exclude a spontaneous utterance that meets those prerequisites on the ground that, in light of other evidence, the statement no longer appears reliable. Rather, it is the circumstances of the excited utterance that confer the requisite reliability. The excited utterance exception to the hearsay rule "is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 222 (1973), quoting J. Wigmore, Evidence § 1747 (3d ed. 1940). "For the purpose of the spontaneous utterance exception to the hearsay rule, an utterance is spontaneous if it is made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and *thus* it has sufficient indicia of reliability" (emphasis added). *Commonwealth* v. *Zagranski, supra* at 285.

Of course, the substance of the declarant's excited utterance may be controverted by other evidence. For example, it may be contradicted by the testimony of other eyewitnesses; it may be refuted by forensic evidence; or, as here, it may be contradicted by the declarant herself. See *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 552-553 (1997) (where victim's excited utterances met tests for admissibility, judge did not err in admitting them despite victim's later recantation). Such contrary evidence goes to the weight to be given the spontaneous utterance by the finder of fact, not to its admissibility. The

defendant's suggestion that the judge has independent discretion to determine whether, in light of other evidence, the utterance is "reliable" would effectively require the judge to hear the entirety of the other proposed trial evidence and would have the judge usurp the fact finder's function and decide whether the spontaneous utterance was outweighed by more credible, reliable evidence. The judge's broad discretion to determine whether the prerequisites for the spontaneous utterance exception have been satisfied does not suggest such a broad ranging inquiry into the weight to be given to the spontaneous utterance. Rather, admissibility is determined solely by reference to the requirements of the exception itself.

2. *The victim's invocation of Fifth Amendment privilege.* At trial,[2] the Commonwealth introduced the testimony of officers Rowell and Magnan, who testified to the victim's spontaneous utterances and to their observations of the injuries to her neck. Photographs of the victim's neck, taken at the police station shortly after the incident, were also introduced.

The defendant, who called the victim to testify, intended to introduce evidence of her recantation of the accusations contained in her spontaneous utterances. However, the judge was concerned that the victim's recantation under oath might expose her to prosecution, and he appointed counsel to advise her with respect to her rights against self-incrimination. After consultation with counsel, the victim asserted her Fifth Amendment privilege.[3]

The defendant objected, arguing that the victim's testimony under oath earlier that same day at the voir dire constituted a waiver of her Fifth Amendment rights.[4] The judge offered to listen to the recording of the victim's voir dire testimony to

---

[2]The trial proceeded before a different judge. The judge who conducted the voir dire had, in the course of ruling on the motion in limine, expressed views about the merits of the case. Subsequently, on learning that the defendant intended to waive his right to a jury trial, the judge appropriately recused himself from the jury-waived trial.

[3]She did not separately claim any privilege under art. 12 of the Massachusetts Declaration of Rights.

[4]He did not contend — nor could he — that the victim's testimony recanting her prior accusations (which she had made in statements to the police and in a sworn affidavit in support of a request for protective order) would not at least potentially incriminate her. "A witness may refuse to testify unless it is

determine whether she had waived the privilege, but he opined that, unless she had been expressly advised of her rights prior to giving that voir dire testimony, he would not find a "knowing and valid." waiver of those rights. Defense counsel acknowledged that there had been no such express advice prior to the victim's voir dire testimony. The judge, opining that the absence of such express advice automatically precluded any valid waiver, allowed the victim to exercise her privilege against self-incrimination.[5]

"It has long been the law in Massachusetts that if an ordinary witness, not a party to a cause, voluntarily testifies to a fact of an incriminating nature he waives his privilege as to subsequent questions seeking related facts."[6] *Taylor* v. *Commonwealth*, 369

---

'*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate (emphasis in original)." *Commonwealth* v. *Martin*, 423 Mass. 496, 502 (1996), quoting *Commonwealth* v. *Funches*, 379 Mass. 283, 289 (1979).

[5]Because the invocation of the privilege rendered the victim unavailable, the judge allowed the defendant to introduce the victim's voir dire testimony as prior recorded testimony, and the judge listened to the recording of that testimony. He also allowed the defendant to introduce a written statement that the victim had given in July, 1998, although the basis for admitting that statement is unclear. In her July, 1998, statement, the victim explained that she had punched the defendant and that the defendant had pushed her back and held her in order to defend himself. She then tried to open the door of the moving vehicle to jump out, but the defendant pulled her back and shut the door "to protect" her. She asked the driver to pull over at the gasoline station, and got out of the vehicle once it was stopped. She remembered calling her mother and the police, and she acknowledged telling the police that the defendant had assaulted her. She stated, however, that she was "highly intoxicated" at the time and that she "didn't remember saying any of it."

The prosecutor was then allowed to introduce an affidavit that the victim had submitted on March 14, 1998, in support of her request for a protective order against the defendant. That affidavit, handwritten by the victim, stated that she and the defendant got into an argument about another man while riding back from a nightclub in Springfield; that the defendant grabbed her by the neck three times; that she could not breathe when he did so; that she tried to jump out of the vehicle in order to escape; that the defendant threatened to kill her; that the driver stopped the vehicle and tried to get the defendant away from her, at which time she managed to struggle free and get out; and that she then ran to the gasoline station and called her mother and the police.

[6]The waiver, once made, waives the privilege only with respect to the same proceeding; the witness may once again invoke the privilege in any subsequent proceeding. See *Commonwealth* v. *Martin*, 423 Mass. 496, 500-501 (1996)

Mass. 183, 189 (1975). However, the doctrine of waiver by prior testimony "is not based on any true waiver theory at all in the usual sense of a voluntary, intelligent relinquishment of a known right." *Id.* Rather, it is based on two pragmatic ramifications of the witness's prior voluntary, but potentially incriminating, testimony. One is that "when a witness has freely testified as to incriminating facts, continued testimony as to details would no longer tend to incriminate." *Id.* at 190. The second rationale given in support of the doctrine of waiver by testimony is that "allowing the testimony to remain in a witness-selected posture would result in serious, unjust distortion; and the witness, having chosen to answer when he could have remained silent, 'cannot be allowed to state such facts only as he pleases to state, and to withhold other facts.' " *Id.*, quoting *Commonwealth* v. *Price*, 10 Gray 472, 476 (1858).

Waiver by testimony does not require that the witness's failure to invoke the Fifth Amendment be knowing and intelligent. Rather, waiver by testimony occurs whenever the prior incriminating testimony has been given voluntarily. See *Commonwealth* v. *Koonce*, 418 Mass. 367, 377 (1994) (hearing held to determine whether witness's "earlier testimony was voluntary, and thus constituted a waiver of his privilege against self-incrimination"); *Luna* v. *Superior Court*, 407 Mass. 747, 750, cert. denied, 498 U.S. 939 (1990) (witness waived privilege "when he voluntarily submitted an affidavit"); *Taylor* v. *Commonwealth*, *supra* at 190 ("witness who voluntarily answers" incriminating question waives privilege with respect to another question "regardless of the reasons which may have impelled

(waiver of privilege before grand jury does not waive privilege at trial); *Commonwealth* v. *Borans*, 388 Mass. 453, 457-458 (1983) (same). A voir dire hearing, held on the day of trial, is the same proceeding as the trial for purposes of the doctrine of waiver by testimony, and the Commonwealth does not contend otherwise. See *Luna* v. *Superior Court*, 407 Mass. 747, 750-751, cert. denied, 498 U.S. 939 (1990) (privilege could not be claimed at trial where witness had submitted incriminating affidavit in connection with pretrial motion and testified at pretrial hearing); *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 45-46 (1992), *S.C.*, 423 Mass. 546 (1996) (witness who testified at motion to suppress, recanted that testimony in an affidavit, and testified at hearing on motion to reconsider, could not invoke the privilege at trial). See also *Commonwealth* v. *Judge*, 420 Mass. 433, 445 n.8 (1995) (hearing on motion to suppress is same proceeding as trial for purposes of waiver by testimony).

his original waiver"); *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 45-46 (1992), *S.C.*, 423 Mass. 546 (1996) (error to allow witness to invoke privilege at trial where witness's testimony at two prior hearings was "voluntary"). See also *Commonwealth* v. *Martin*, 423 Mass. 496, 500 (1996) ("witness who voluntarily testifies regarding an incriminating fact waives his privilege against self-incrimination").

A witness's ignorance of the privilege is a factor to be considered in the over-all assessment whether the prior testimony was voluntarily given. See *Commonwealth* v. *Koonce*, *supra* at 377-379 (witness who had minimal education, was ignorant of his Fifth Amendment rights, and had testified at prior trial because of fear that refusal to testify would result in criminal charges, did not give incriminating testimony voluntarily; privilege properly invoked at retrial); *Taylor* v. *Commonwealth*, *supra* at 191-193 (juvenile witness who attended trial alone, lacked advice from parents or counsel, was not advised of rights by judge, and testified only with "much reluctance and hesitancy" did not waive his privilege against self-incrimination). By the same token, a witness's knowledge of the privilege is a factor tending to show that the incriminating testimony was given voluntarily. See *Luna* v. *Superior Court*, *supra* at 750 (witness who had met numerous times with attorney and who was present when judge observed that he could "take the Fifth Amendment" found to have given incriminating testimony voluntarily; privilege against self-incrimination was waived).

While advising the witness concerning the privilege immediately prior to the witness's testimony is relevant to the assessment whether the witness's incriminating testimony was given voluntarily, it is not dispositive of the issue.[7] Here, however, the judge decided there had been no valid waiver un-

---

[7] For example, a witness who is not advised of the privilege at the start of the hearing may already be fully cognizant of the privilege. Or, even with no knowledge of, or advice concerning, the privilege, a witness's desire to testify at the earlier hearing may be manifest such that the testimony would still be considered voluntary. By the same token, the fact that a witness was advised of the privilege would not automatically mean that incriminating testimony was given voluntarily. A witness who is fully aware of the privilege may nevertheless be subject to threats or other forms of coercion that would make

less the witness had been expressly advised of her Fifth Amendment privilege at the start of her voir dire testimony. He advised counsel that, unless such advice was demonstrated by the recording of the proceedings, he would rule that the privilege had not been waived. Nothing in our jurisprudence on waiver by testimony suggests that the voluntariness of prior testimony is dependent on a contemporaneous advisement concerning Fifth Amendment rights. The inquiry as to the voluntariness of this witness's ostensible waiver was improperly truncated and reduced to a single factor.

The Commonwealth argues that any error in allowing the victim to invoke her privilege against self-incrimination was harmless because, by way of both her prior recorded testimony and the admission of her July 1, 1998, written statement, the victim's recantation was placed before the finder of fact in full detail (see note 4, *supra*). We do not agree. At issue was the credibility of the victim and, specifically, whether her recantation was sufficiently credible to cast doubt on the truth of her spontaneous utterances. The mere fact of her recantation does not, by itself, do anything to support the credibility of that recantation. Although the judge heard the recording of the victim's testimony at voir dire, that testimony was very brief and lacked detail. At the voir dire, the defendant had merely wanted to put before the judge the fact of the victim's recantation and, based on that fact alone, exclude the spontaneous utterances. It was not the full presentation of the testimony that the defendant wanted to introduce at trial. It was the defendant's apparent intention to have the witness testify in person to the details of how the incident had occurred, and it was the defendant's hope that the victim's more detailed explanation of her recantation would be sufficiently convincing to raise doubt about the credibility of her spontaneous utterances.[8]

In the absence of the live witness, the defendant was also left with no opportunity to address the matters raised by the victim's protective order affidavit. In many respects, at least on the cur-

---

the testimony involuntary. The waiver issue cannot be decided merely on the presence or absence of a warning about Fifth Amendment rights.

[8]Although some detail was contained in the victim's July 1, 1998, statement, it was presented at trial only in written form.

rent record, that affidavit severely damaged the credibility of the victim's later recantation. Her claim to have made the accusations only because she was "highly intoxicated" is largely belied by the coherent, organized, chronological recounting of the attack, written in her own hand, sometime shortly after the attack. However, where that affidavit was only introduced at trial and never mentioned at the voir dire, neither side questioned the victim about that affidavit or her pursuit of the protective order.

We recognize that victims of domestic violence often change their minds about whether to testify and whether to press charges in connection with a prior attack. See *Commonwealth* v. *DiMonte*, 427 Mass. 233, 244 (1998). That does not mean, however, that every recantation by such a victim witness is to be discredited or simply assumed to be the product of that phenomenon. While there is much here to suggest that the victim's initial account to the police was more credible than her later recantation, the defendant was entitled, absent any proper invocation of privilege by the victim witness, to call the victim witness and present her live testimony. We cannot simply assume that such testimony would not have been credible enough to create a reasonable doubt as to the defendant's guilt.[9]

It is therefore necessary to remand this matter for further proceedings to determine whether the victim's testimony at the voir dire hearing constituted a waiver of her Fifth Amendment privilege. If there was not a valid waiver, the witness properly invoked the privilege at trial, and there would be no prejudice from the judge's having allowed her to do so. If, however, there was a waiver, it was prejudicial error to allow the witness to invoke the privilege and the defendant would be entitled to a new trial. The matter is therefore remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[9]Indeed, the judge who heard her live testimony at the voir dire expressed the view that the Commonwealth would be unable to prevail at trial in light of that recantation.