## COMMONWEALTH *vs.* AMITABHA CARTER.

No. 00-P-1791.

Norfolk. January 16, 2002. - May 2, 2002.

Present: LAURENCE, KAPLAN, & DREBEN, JJ.

*Evidence,* Hearsay, Spontaneous utterance, Judicial discretion.

At the trial of a complaint charging assault and battery and threatening to commit a crime, the judge was within his discretion in admitting in evidence, as a spontaneous utterance, the victim's statements to a police officer that were made to the officer who had arrived on the scene shortly after the incident, and that characterized and explained the underlying event. [630-632]

COMPLAINT received and sworn to in the Brookline Division of the District Court Department on November 8, 1999.

The case was heard by *Herbert N. Goodwin,* J.

*Donald A. Brisson* for the defendant.

*Michael S. Thorne (Frances M. Burns,* Special Assistant District Attorney, with him) for the Commonwealth.

DREBEN, J. This is an appeal from the defendant's convictions, after a bench trial, of assault and battery and of threats to commit a crime.[1] The sole evidence against the defendant was the testimony of a police officer who recounted statements of the defendant's mother that were admitted in evidence over the defendant's objection[2] under the spontaneous utterance exception to the hearsay rule.

The facts as testified to by Officer Hatzieleftheriadis, a member of the Brookline police department, are as follows.

On November 4, 1999, at 12:05 A.M., Officer Hatzieleftheria-

---

[1]The defendant was sentenced to probation.

[2]The defendant sought to exclude the statements, but the judge told counsel that since there was only one witness, he would hear the evidence and the defendant should move for acquittal. The defendant's counsel complied.

dis and her partner received a call to go to 7A Smythe Street in Brookline. "At some point" they proceeded to that address. When they arrived, the defendant and his mother were standing on the porch. The officer described the mother as "very guarded, nervous . . . she kept looking at her son and then looking at us . . . [v]ery cautious about him." The defendant asked his mother, "what did you do?" The officer testified that the defendant's mother "didn't really want to look at him."

The police separated the defendant and his mother. "[T]rying to keep her voice low" so that the defendant would not hear, his mother told the officer that the defendant had entered her bedroom, awakened her, and demanded that she give him back the rent money he had previously given her. When she refused, he grabbed her, ordered her to get dressed, and to get her bank card. She got dressed, he grabbed at her pocketbook, and they struggled. He pried her fingers from the pocketbook, and threatened to destroy her room if he did not get what he wanted. She knew he wanted the money for drugs.

On cross-examination, the officer acknowledged that the mother was not weeping, but repeated that she appeared "controlled and guarded"; the officer did not notice any injuries, and the mother refused treatment.

Pointing to the fact that the mother appeared controlled and guarded, and that there was no testimony that she was visibly upset, distraught, hysterically sobbing, or in shock as in most of the cases permitting spontaneous utterances, see, e.g., *Commonwealth* v. *Rivera*, 397 Mass. 244, 246-248 (1986); *Commonwealth* v. *Nunes*, 430 Mass. 1, 3-4 (1999); *Commonwealth* v. *Marshall*, 434 Mass. 358, 364 (2001); *Commonwealth* v. *Tracy*, 50 Mass. App. Ct. 435, 438 (2000); *Commonwealth* v. *Santiago*, 52 Mass. App. Ct. 667, 673, further appellate review granted, 435 Mass. 1105 (2001), the defendant argues that here the exciting event had "lost its sway." See *Commonwealth* v. *Tevlin*, 433 Mass. 305, 318 (2001).

The test of admissibility of statements under the spontaneous utterance exception to the hearsay rule is of some vintage. As stated in *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 196-197

(1960), and oft repeated,[3] "With respect to spontaneous utterances the guiding principles have been stated — and in our view correctly — by Prof. Wigmore: 'The utterance must have been before there has been time to contrive and misrepresent. . . . It is to be observed that the statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated . . . . [T]here can be no definite and fixed limit of time. Each case must depend upon its own circumstances.' Wigmore on Evidence (3d ed.) § 1750. . . . The trial judge in determining whether an utterance meets the tests of admissibility ought to be given broad discretion. . . . [A]nd only in clear cases . . . of an improper exercise of discretion should his ruling be revised."

Just as a judge has wide discretion in determining whether the length of time between the statement and the exciting event is too long, so has a judge discretion to determine whether the declarant whose statement is offered is still under the influence of the exciting event. *Commonwealth* v. *King*, 436 Mass. 252, 254-255 (2002). Thus, in *Commonwealth* v. *Tevlin*, 433 Mass. at 319, the court held that the trial judge had not abused her discretion in admitting a statement by a victim made to a doctor approximately one-half hour after the incident and after the victim had already spoken to other people, including the police. The court rejected the claims that the statement came too late, and that the distress of the underlying event had dissipated. The elderly victim had suffered a vicious assault and was clearly terrified. In *Commonwealth* v. *Williams*, 399 Mass. 60, 69 (1987), the court rejected a defendant's contention that in light of evidence that the victim was in control of his faculties when he made the statements, that he was able to telephone the police, that he had calmed down, and that he had made his statements in response to police inquiries, the judge had abused his discretion in admitting the statements. While it is true that in both cited cases the circumstances were stronger for admission — in *Tevlin*, the victim had been the subject of a vicious attack and

[3]See, e.g., *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973); *Commonwealth* v. *Puleio*, 394 Mass. 101, 104-105 (1985); *Commonwealth* v. *Williams*, 399 Mass. 60, 69 (1987).

in *Williams*, the statements were made only three minutes after the robbery — we consider that although the question is close, the judge here was within his discretion in determining that the mother was fearful and nervous and still under the influence of the frightening behavior of her son, who not only had wanted to filch her ATM card to get money to buy drugs, but actually had physically struggled with her. While there was no evidence as to the length of time between the mother's phone call to the police and their arrival, the officers were in their patrol car at the time they received the message to go to Smythe Street, and in view of the size of Brookline, it can be inferred that they arrived shortly after the incident. The statements were made at the scene of the incident and they characterized and explained the underlying event. See *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), *S.C.*, 430 Mass. 683 (2000).

In sum, the judge could properly determine that the foundational requirements of the spontaneous utterance exception to the hearsay rule had been met: the statements were "made under the influence of an exciting event . . . and [they] tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *King*, 436 Mass. at 254.

*Judgments affirmed.*