NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1259

COMMONWEALTH

vs.

CLAUDE J. GRAY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After jury trial in the District Court, the defendant was convicted of two counts of witness intimidation, assault and battery on a family or household member, and violation of an abuse prevention order.  On appeal, he argues that (1) the admission in evidence of the victim's prior recorded testimony violated his rights to confrontation and (2) the evidence at trial was insufficient to establish one of the witness intimidation counts.  After review, we affirm.

Background.  On the morning of December 22, 2021, the police assisted elder services in doing a well-being check on a resident.  When they got to the apartment, there was a handwritten note on the door:  "not home today, thanks."  After

the property manager allowed the police in, they found the defendant in bed with the sixty-four year old victim, who had two black eyes, a swollen lip, and bruising around her neck. The defendant was arrested for violating a "no-trespass order" and transported to the police station. The victim then told the police that her injuries were due to a recent motor vehicle accident.

The next day, the defendant was arraigned on the trespass charge, as well as on a charge of assault and battery on a person aged sixty or older. Pursuant to the Commonwealth's request, the defendant was held without bail pending a dangerousness hearing, scheduled for December 27, 2021. On that date, the victim came to court and met with the prosecution team, during which she advised that she had lied when she said she had been in a motor vehicle accident; she stated that her injuries resulted from a beating by the defendant. Later that day, the victim obtained an ex parte abuse prevention order against the defendant; that order prohibited the defendant from having any contact, direct or indirect, with the victim. The dangerousness hearing did not take place that day because the defendant had filed a motion to dismiss the complaint,[1] and the motion was put over for the next date.

---

[1] The basis of the motion was that the charge of assault and battery on a person sixty years or older was supported only by a

On January 3, 2022, the defendant's motion to dismiss was heard and allowed without objection; however, the defendant was arraigned on new charges of strangulation or suffocation, violation of an abuse prevention order, and two counts of witness intimidation.[2]  The defendant offered to stipulate to dangerousness with respect to the new charges, but the Commonwealth insisted on an evidentiary hearing.[3]  The victim testified at the hearing that the defendant had assaulted her including slapping and punching her in the face with a closed fist.  In addition, the victim testified that, after the assault, the defendant said to her:  "If you send me to jail, I'll make sure you go, too."  The victim explained that she lied to the police in order to protect the defendant.  Additionally,

---

statement that the police did not believe that the victim's injuries were consistent with a car accident.

[2] The strangulation or suffocation charge arose out of the same incident as the charges set forth in the dismissed complaint, but it was supported by the victim's subsequent disclosure directly implicating the defendant; the violation of abuse prevention order and witness intimidation charges were premised on subsequent events.

[3] The defendant argued that the Commonwealth was seeking to preserve the victim's testimony for future use, and that this was an improper purpose for going forward with the hearing in the face of the defendant's willingness to stipulate to and be held because of dangerousness.  The judge rejected the argument. On appeal, the defendant argues that, for the purpose of prior recorded testimony, unavailability due to assertion of the Fifth Amendment privilege should be treated differently than other types of unavailability.  As we view no such distinction in the case law, we decline to create one.

the victim testified that, since the defendant was placed in custody, three of her friends had received letters from the defendant asking them to intimidate the victim. The defendant was held without bail on dangerousness.

On the date of trial, the defendant opted to represent himself with appointed standby counsel. Additionally, the prosecutor informed the court that the victim did not want to testify, and that if she became an unavailable witness, the Commonwealth intended to introduce her testimony from the dangerousness hearing. The judge appointed an attorney to represent the victim. After an ex parte, in camera hearing,[4] the judge ruled that the victim had validly invoked her Fifth Amendment privilege against self-incrimination and was therefore unavailable to testify at trial, and allowed the Commonwealth's motion to introduce the victim's prior recorded testimony from the dangerousness hearing.

The parties proceeded to jury selection. After the venire had been exhausted without completing jury selection, the parties proposed an unagreed plea to the judge. After a plea colloquy with the defendant, the prosecutor gave a recitation of the facts, which the defendant admitted were true. The judge

---

[4] The hearing took place pursuant to Commonwealth v. Martin, 423 Mass. 496, 505 (1996).

4

then asked for any input from the victim on disposition.  The victim, after being sworn, began:

> "I fear that I may be the one who may have started this whole incident.  That's why I was going to claim the Fifth.  I think you already know that.  I do know that we concocted a story, because it just seemed easier at the time; and then the police showed up and there was no more story.  Most of the time, all the time, we get along very, very well, and I know him well.  We were drinking, and he snapped, and it just got worse for a little while."

After expressing her view that the time served in custody pending trial was enough punishment for the defendant and that "he just needs some counseling," the victim concluded:  "I've known [the defendant] for twelve years, and there's never been an incident like this."  After the judge announced his proposed disposition, the defendant withdrew the offer to plead.

The following day, jury selection concluded and trial commenced.  The Commonwealth presented its case, including the prior recorded testimony of the victim.  The defendant presented his case, including his own testimony.  He denied having caused the victim's injuries and instead attributed them to a medical condition that caused her to have frequent falls, along with intoxication and a prior car accident.  He sought to explain the victim seeking a restraining order by showing that she risked eviction if she did not do so.  And he testified that the victim had found out that he had been with another woman, which explained her testimony at the dangerousness hearing:  "She was

5

a scorned woman."  He pointed out that the victim did not testify at trial, "because she knows it's not true."

Discussion.  1.  Prior recorded testimony.  The defendant contends that his confrontation rights were violated by the admission in evidence of the victim's testimony from the dangerousness hearing.  Admission of prior recorded testimony at a criminal trial does not violate confrontation rights where the witness is unavailable at trial and the defendant had an adequate opportunity to cross-examine during the prior recorded testimony.  See Commonwealth v. Caruso, 476 Mass. 275, 293 (2017).  Whether there was an adequate opportunity to cross-examine depends on five factors:  If (1) the declarant was under oath, (2) the defendant was represented by counsel, (3) the proceeding took place before a record-keeping tribunal, (4) the prior proceeding addressed substantially the same issues as the current proceeding, and (5) the defendant had reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant.  Id.  There is no dispute that all five conditions were met with respect to the victim's testimony at the dangerousness hearing.[5]  See Commonwealth v.

---

[5] On cross-examination, the defendant elicited from the victim that she was intoxicated on the night of the incident, that she was the one who put the note on the door saying that no one was home, that she had falls on her own at home, that she never told the police that the defendant had assaulted her even though the defendant was not present, that she initially refused

6

<u>Hurley</u>, 455 Mass. 53, 63 (2009) (admission of detention hearing testimony at trial did not violate right to confrontation).

The question on appeal is whether the victim was truly unavailable so as to unconstitutionally deprive the defendant of her live testimony at trial. The victim's unavailability came from her invocation of the Fifth Amendment privilege against self-incrimination. See <u>Commonwealth</u> v. <u>Canon</u>, 373 Mass. 494, 499-500 (1977) (assertion of Fifth Amendment privilege constitutes unavailability for purposes of prior inconsistent statement). Once the judge ruled that the victim had a valid basis for asserting the privilege, the defendant had no right to call her as a witness at trial. See <u>Pixley</u> v. <u>Commonwealth</u>, 453 Mass. 827, 834 (2009). Nevertheless, the defendant argues that he should have been able to call the victim at trial, because she had waived the privilege through her prior testimony both at the aborted plea hearing and at the earlier dangerousness hearing. Because the issue of waiver by testimony was not raised below, we review for a substantial risk of a miscarriage of justice.[6] <u>Commonwealth</u> v. <u>Rand</u>, 487 Mass. 811, 815 (2021).

medical attention, that even when she went to the hospital later she told them that she had been in a car accident, and that she needed to get the restraining order against the defendant in order to maintain her housing.

[6] We reject the defendant's argument that his objection to the prior recorded testimony on confrontation grounds encompassed the specific argument that the victim had waived her

7

A witness may waive her privilege against self-incrimination by voluntarily testifying to facts of an incriminating nature.  See Taylor v. Commonwealth, 369 Mass. 183, 189-191 (1975).  Even where a witness voluntarily testifies to certain incriminating facts, however, the witness may still be entitled to invoke the privilege if there is a real danger that further testimony will expose the witness to legal detriment.  See Commonwealth v. Funches, 379 Mass. 283, 290-291 (1979).  The waiver, once made, waives the privilege only with respect to the same proceeding.  See Commonwealth v. King, 436 Mass. 252, 258 n.6 (2002).  Whether a voluntary waiver has occurred is a question of fact for the judge.  Id. at 258-259.  Because the judge was never asked to make a ruling whether the victim voluntarily waived her privilege against self-

---

privilege against self-incrimination by prior testimony.  See Commonwealth v. Grady, 474 Mass. 715, 719-720 (2016) (objection that substitute chemist would violate confrontation rights did not preserve specific objection to substance of testimony).

The defendant argues that he did not need to raise the issue because the judge was required to consider the issue of waiver in the overall assessment of the witness' privilege.  We disagree.  When considering the question of privilege, the judge must be alerted that there is a question of waiver in order to specifically address that issue.  See Commonwealth v. King, 436 Mass. 252, 257-258 (2002) (appellate court reviewed issue where defendant argued to trial judge that witness claiming Fifth had waived it by earlier voir dire testimony); Commonwealth v. Penta, 32 Mass. App. Ct. 36, 45 (1992), S.C., 423 Mass. 546 (1996) (fact that privilege existed did not conclude appellate court's inquiry where defendant raised issue of waiver by testimony to trial judge).

incrimination, there are no findings on which to now base an analysis. See Commonwealth v. Williams, 58 Mass. App. Ct. 139, 144 (2003) (appellate court unable to resolve issue without trial court findings).

Even were we to assume that the victim's prior testimony at the plea hearing was voluntary and part of the same proceeding, we are not persuaded that the testimony was sufficiently incriminating so as to constitute a waiver. At the aborted plea hearing prior to trial, the victim testified that she "may be the one who may have started this whole incident." Notwithstanding her comment, "That's why I was going to claim the Fifth," her testimony did not give rise to any criminal liability. See Funches, 379 Mass. at 291 (witness did not waive privilege against self-incrimination by admitting that defendants came to his door looking to buy drugs, because he did not admit to any element of any crime). We reject the defendant's argument that her testimony amounted to an admission that she was the first aggressor and that it exposed her to criminal charges of assault and battery.

Likewise, the defendant contends that the victim's testimony at the dangerousness hearing, to the effect that she did not recall getting into an argument with the defendant prior to the assault, "opened the door" to waiver by testimony on the subject of whether she was the first aggressor and liable for

9

assault and battery on the defendant.  Again, we reject the defendant's argument that a denial that there was an argument prior to the assault amounted to an admission that the victim was the first aggressor and exposure to criminal liability for assault and battery.[7]  In the end, the basis for the victim's assertion of privilege is unknown.[8]  The defendant has failed to establish that the victim waived that privilege by her pretrial testimony.

2.  Sufficiency of evidence of witness intimidation.  The defendant contends that the Commonwealth failed to establish all of the essential elements of witness intimidation with respect to the count involving the letter to the defendant's former

---

[7] The defendant also argues that the victim waived her privilege at the dangerousness hearing to the extent that she admitted lying to the police concerning the cause of her injuries, and so he should have been able to call the victim to explore this issue.  However, he did not make clear to the judge that he wanted to call the witness for this limited purpose.  And, in any event, the issue was fully explored at the dangerousness hearing, so his lack of opportunity to cross-examine her about it at trial created no substantial risk of a miscarriage of justice.  The defendant also argues that, to whatever unknown extent the issue giving rise to the victim's Fifth Amendment privilege arose after the dangerousness hearing, he never had an opportunity to cross-examine her on this unknown new issue, so that the conditions for admitting her prior recorded testimony were not met.  But that is the case with any witness assertion of the privilege -- the defendant is deprived of the opportunity to cross-examine the witness as to the privileged matter.  In any event, on this record the unpreserved claim is too speculative to entitle the defendant to relief.

[8] The panel requested to review the Martin hearing recording but was advised that it is unavailable.

10

employer.[9]  In order to prove witness intimidation, the Commonwealth was required to show that the defendant (1) willfully; (2) threatened, intimidated, or harassed; (3) a witness in a criminal proceeding of any type; (4) with the intent to impede or interfere with a criminal investigation or proceeding.  See Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 304 (2023).

Here, the Commonwealth presented evidence that the defendant sent a letter to his former employer, pleading with him to call the victim and "TELL HER NOT TO GO TO COURT . . . AND THIS WILL EVENTUALLY GO AWAY" and "PLEASE CALL HER . . . AND CONVINCE HER -- OR I'M HAVING HER ARRESTED FOR STEALING."  The former employer thereafter spoke to the victim over the phone and read the letter to her, "word for word."

The defendant argues that the substance of the letter failed to demonstrate any intimidation directed at the victim or an intent to intimidate her, because it amounted to a simple request that she to decline to appear in court.  Additionally, the defendant argues that, to the extent the letter mentioned that the defendant would have the victim arrested for stealing

_____

[9] The other count of witness intimidation involved the defendant's statement to the victim, just after he assaulted her, that if she called the police on him she would end up going to jail.  The evidence on this count came through the victim's prior recorded testimony.

11

from him, there is no indication in the letter that this message was intended to be conveyed to the victim.

As acknowledged by the defendant, the threat to "have [the victim] arrested" may reasonably be viewed as intimidating. See Gardner, 102 Mass. App. Ct. at 304 (intimidation defined as words or actions that would instill fear in reasonable person). And although there was no explicit directive to communicate the entire substance of the letter to the victim, the strong thrust of the letter was to "convince" the victim not to go to court; the letter set forth the points that could be used to do so, like promising that he would get his clothes out of her apartment and never see her again and threatening that he had evidence that could get her "federal charges" that he would pursue if she didn't comply.

In the light most favorable to the Commonwealth, the jury could have inferred that the defendant intended that the threat be communicated to the victim. See Commonwealth v. Lahens, 100 Mass. App. Ct. 310, 320 (2021) (criminal intent may be inferred from circumstances). See also Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) (facts to be viewed in light most

favorable to Commonwealth on appeal from conviction).  The evidence was sufficient to prove witness intimidation.

Judgments affirmed.

By the Court (Sacks, Singh & Walsh, JJ.[10]),

Clerk

Entered: January 28, 2025.

---

[10] The panelists are listed in order of seniority.