COMMONWEALTH *vs.* PAMELA J. HARDY.

No. 97-P-1935.

Essex. June 4, 1999. - September 8, 1999.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

*Evidence,* Spontaneous utterance. *Practice, Criminal,* Required finding. *Robbery. Breaking and Entering.*

Discussion of cases considering the excited utterance or spontaneous exclamation exception to the rule against hearsay. [681-682]

The statement of a robbery victim, who died of unrelated causes before the alleged assailant's trial, given to police about three hours after the incident, which contained the only evidence of the general appearance of the attacker and of the element of force and violence or placing in fear, was not, in the circumstances, properly admissible as an excited or spontaneous utterance; the error created a substantial risk of a miscarriage of justice and the defendant was entitled to entry of judgment in her favor. [682-686]

INDICTMENTS found and returned in the Superior Court Department on February 15, 1995.

The cases were tried before *Barbara J. Rouse*, J., and a motion for a new trial was heard by her.

*Richard B. Klibaner* for the defendant.

*Elin H. Graydon*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. The main contention of the defendant in her appeal from convictions of breaking and entering a dwelling in the daytime with intent to commit a felony (G. L. c. 266, § 18),[1] unarmed robbery of a person over sixty-five years of age (G. L. c. 265, § 19), and assault and battery (G. L. c. 265, § 13A),[2] and from the denial of her motion for a new trial, is that it was

---

[1]The defendant was indicted for breaking and entering in the nighttime with intent to commit a felony (c. 266, § 14), but was convicted of the lesser-included offense pursuant to c. 266, § 18.

[2]The assault and battery conviction was filed with the defendant's consent.

error for the judge to admit a hearsay statement of the victim who had died just four days after the robbery. His demise was unrelated to the injuries he sustained during the assault. On the first day of trial, the defendant's trial counsel filed a motion in limine to exclude the statement of the victim given to the police on the day of the robbery. The judge denied the motion and the defendant's trial counsel made no objection to this testimony, which is, therefore, reviewed only to determine if its admission created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 7 (1986); *Commonwealth* v. *Keniston*, 423 Mass. 304, 308 (1996).

We give a condensed account of the case, which will provide background for the defendant's points of law. It was about 5:00 A.M. on January 9, 1995, at the Leisure Towers in Lynn, a fifteen-story senior citizen apartment complex. Jeremiah Paquette, who was eighty-four years of age, had just heard a knock on his door. Someone asked to be let inside. Paquette refused. Some time later, about 5:45 A.M., Paquette left his apartment to empty a wastebasket. A person emerged from "out of nowhere," grabbed him by the throat and forced him back into his apartment. He was beaten and robbed. The intruder fled, having relieved Paquette of his wallet.

The government's version of what happened came primarily through the testimony of Christopher Foglietta, a Lynn police officer, who testified that later that morning, between 8:00 A.M. and 9:00 A.M., after he received a report of the robbery, he went to Leisure Towers to interview Paquette. That meeting took place in the complex's management office. Paquette, seated in a chair, was bleeding from a laceration about his ear. There were contusions to his ear, hand and nose. In response to Foglietta's inquiries, Paquette gave a detailed explanation of the events just described. In addition to his wallet, containing one hundred dollars, and a magnetic card to gain access to the building, twenty-five dollars was taken from his apartment. Paquette described the person as a man who claimed to be a woman, more than five feet ten inches tall, about twenty-three to twenty-five years of age, either white or Hispanic, with long brown hair. As he spoke to the officers, he sobbed and appeared to be in pain. A quick search of the common areas of the building after the interview concluded was not productive.

Four days later, on January 13, 1995, police turned up information from two other residents of the complex, who

confirmed that a woman in her thirties, with long dark hair, appeared at their doors between 6:00 A.M. and 6:30 A.M. on the day in question asking to use their telephones for an emergency call. Both residents, who testified at the trial, got a good look at the person and were able to select the defendant's photograph from an array compiled by the police. They were certain that the defendant was the person they saw on the morning in question. Based upon this information, the police arrested and charged the defendant. By this time, Paquette had passed away.

The defendant did not testify at trial. Her version of the events was brought out on cross-examination of a government witness, Kelly Hart, who testified that on January 9, 1995, the defendant was living in an apartment just below Hart in the city of Gloucester. Hart, on direct examination, had the defendant arrive inside her place on the morning of the robbery garbed in dirty clothes and with blood stains on her jacket. When Hart picked up the clothes that the defendant shed in favor of a clean change, Paquette's wallet fell out of the defendant's jacket. Defense counsel's cross-examination elicited some equivocal information from which the jury might infer that Hart was the robber. In her closing argument, defense counsel suggested that Hart tried to fix the blame on the defendant after the police contacted her.

When a motion in limine is denied and counsel fails to object during trial when evidence originally sought to be excluded is introduced, appellate review is based upon a "substantial miscarriage of justice" standard. See *Commonwealth* v. *Gabbidon*, 398 Mass. at 7; *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 551-552 (1997).

As we review the evidence, the government's proof of the elements of all the charges rests on Paquette's statement to Foglietta. Absent that proof, the government conceded (at oral argument) that the defendant was entitled to a required finding of not guilty on the charges. Paquette's statement to the police contained the only proof that the defendant took Paquette's wallet from his person using force and violence or by putting him in fear. G. L. c. 265, § 19. See *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). It also was the only evidence of the general appearance of his attacker. His death required the government to introduce the Foglietta testimony to salvage the case.

After conducting a voir dire hearing, the judge concluded that

even though "[the victim's] statements were not made until two to three hours after he was beaten and robbed in his apartment that the event had not lost its sway." She found that despite the passage of time, he had no opportunity for reflection on the events. She laid stress on Foglietta's description of the distress and pain that Paquette continued to suffer while under questioning in the manager's office.

As to the concept of excited utterance or spontaneous exclamation, the pertinent authorities have already been collected in Liacos, Massachusetts Evidence § 8.16 (6th ed. 1994). See 6 Wigmore, Evidence § 1750 (Chadbourn rev. ed. 1976).[3] Several factors are relevant to the determination whether a statement is admissible under this exception to the hearsay rule: the degree of excitement displayed by the person making the statements, *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 222 (1973); whether the statement is made at the place where the traumatic event occurred or at another place, see *Commonwealth* v. *Zagranski*, 408 Mass. 278, 284-286 (1990); the temporal closeness of the statement to the act it explains, see *Commonwealth* v. *Giguere*, 420 Mass. 226, 233-234 (1995); and the degree of spontaneity. See *Commonwealth* v. *Hampton*, 351 Mass. 447, 449-450 (1966); *Commonwealth* v. *Burden*, 15 Mass. App. Ct. 666, 676-677 (1983). Earlier cases sometimes justified the admission of such statements by considering them part of the "res gestae" of the event. We have rejected the use of that term, the decisional law focusing instead on whether the proof is "spontaneous to a degree which . . . negate[s] premeditation or possible fabrication." *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987), quoting from *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978). Thus, the application of the principle depends entirely on the circumstances of each case.[4]

In two decisions issued in 1994, the Supreme Judicial Court

---

[3]Proposed Mass.R.Evid. 803(2) is consistent with recent Massachusetts case law, as is Fed.R.Evid. 803(2). The Federal rule provides, "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. See Liacos, *supra* at 519.

[4]Some commentators disparage the conventional wisdom regarding these tests. See Milich, Hearsay Antinomies: The Case for Abolishing the Rule and Starting Over, 71 Or. L. Rev. 723 (1992); Schum, Hearsay from a Layperson, 14 Cardozo L. Rev. 1 (1992). The most critical look at the spontaneous utterance doctrine is presented by Professor Goldman, Distorted Vision: Spontaneous Exclamations as a "Firmly Rooted" Exception to the Hearsay Rule, 23

allowed the government to use spontaneous utterances in circumstances more compelling than appears from the record in this case. See *Commonwealth* v. *Crawford,* 417 Mass. 358, 364-365 (1994); *Commonwealth* v. *Grant,* 418 Mass. 76, 80-82 (1994). In the context of a murder case, the *Crawford* court affirmed the decision of the trial judge to admit the statement of the defendant's four year old daughter, made to her grandmother about one-half hour after her mother's death. As she climbed into her grandmother's car, she said, "Daddy shot Mummy." Relying in part on *Commonwealth* v. *Brown,* 413 Mass. 693 (1992) (statement of three and one-half year old made at hospital approximately five hours after a severe beating), the *Crawford* court noted that "[p]articularly when the declarant is a young child who remains in the company of the alleged perpetrator after a traumatic event, precise contemporaneousness is not required." *Crawford, supra* at 362.

In the *Grant* case, the defendant, after an argument over a drug dealing enterprise, murdered the victim while he lay in bed with his girlfriend. The defendant also shot the girlfriend, who "played dead" and survived the attack. The court, in upholding the admission of a police officer's testimony quoting the girlfriend's responses to questions posed by the officers made about one hour after the shooting, restated the rule as set out in *Commonwealth* v. *McLaughlin,* 364 Mass. at 222, underscoring that the utterance must have been made "before there ha[d] been time to contrive and misrepresent."[5] *Com-*

Loyola L.A. L. Rev. 453 (1990). In his article, Goldman sets out three reasons why spontaneous utterances are unreliable: (1) Witnesses's perceptions are not based on a photographic process which is essentially accurate, but rather are subject to a number of variables; declarants subjectively select "which external signals to process." *Id.* at 459-460. (2) "Empirical psychological studies . . . confirm that the danger of fabrication is decreased where only a matter of seconds or fractions of seconds separate a particular event and an individual's description of the event. However, once the number of seconds has increased even slightly, the reliability of the description is substantially reduced." *Id.* at 460. (3) While a witness's statements may be rendered true by stress, such statements may also reflect a distorted ability to observe and recall because of the stress. *Id.* at 462.

[5] "[The rule] is based on the experience that, under certain· external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties . . . so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is

*monwealth* v. *Grant*, 418 Mass. at 81, quoting from *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960). The police officers in the *Grant* case described the girlfriend as "close to hysterical." *Id.* at 82. This factor provided a sufficient basis for admitting her statements because of her mental state and the stress of an exciting event. *Id.* at 81-82.

What we learn from the *Crawford* and *Grant* cases is that hearsay may be admitted so long as "there has not been time for the exciting influence to lose its sway and to be dissipated." *Commonwealth* v. *Grant*, 418 Mass. at 81, quoting from *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. at 197.

In *Commonwealth* v. *Burnett*, 417 Mass. 740 (1994), the defendant was convicted of motor vehicle homicide after an early morning accident with another motorist whose passenger died as a result of the collision. Blood samples taken from the drivers showed the defendant to have a blood alcohol reading above the presumptive limit, while the other driver's reading was below the limit. The trial judge, after a voir dire hearing, excluded statements attributed to the driver of the other car, overheard by his mother at the hospital, one and one-half hours after the accident, that he had drunk a couple of beers, "some hard stuff," and had "smoked shorts." *Id.* at 743. In holding that the trial judge did not err in the exercise of his discretion by excluding the statements, the court distinguished the situation from that posed in *Commonwealth* v. *Brown*, 413 Mass. 693 (1992), because there the child-declarant was still receiving treatment at the time the statement was made and was under the stress of extreme trauma and pain. In contrast, the adult declarant in *Burnett* appeared calm, and had already received medical treatment. *Commonwealth* v. *Burnett, supra* at 744.

Some of the cases just cited were reviewed in *Commonwealth* v. *DiMonte*, 427 Mass. 233, 236-241 (1998), where a facsimile message sent by a victim at least eight and one-half hours after the alleged assault occurred did not, in the circumstances, have the indicia of reliability required for its admission as an excited utterance, and certain other statements made by the victim to

---

made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy . . . and may therefore be received as testimony to those facts." *Commonwealth* v. *Grant*, 418 Mass. at 80-81, quoting from *Commonwealth* v. *McLaughlin*, 364 Mass. at 222.

the police at least ten hours after the assault lacked the indicia of reliability. Again, the court reinforced the idea that "the length of time between the incident and the statement is important; the further the statement from the event, the more difficult it becomes to determine whether the statement is the result of reflection, influenced by other factors." *Id.* at 239.

The question in this case is close. We would be inclined to rule on this record, particularly in light of Foglietta's responses to the judge's close questioning at the voir dire hearing, that Paquette's statements fail to satisfy the "spontaneity" test under the pertinent authorities. Contrast *Commonwealth* v. *Nunes*, 430 Mass. 1, 3-4 (1999); *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. at 553. The judge, recognizing the need to elicit the context of Foglietta's statements, painstakingly asked him about Paquette's demeanor at the time of the meeting.[6]

In most cases, we afford the trial judge much leeway in determining whether the proffered statements meet the criteria of admissibility for the excited utterance exception to the hearsay rule. *Commonwealth* v. *Fuller*, 399 Mass. at 682. And we recognize that the fact that answers were given in response to police questions does not, in itself, necessarily preclude their being admissible as excited utterances. In this case, however, other than evidence that Paquette was "sobbing" and in pain during the interview, there were no signs that he was under the influence of the exciting event. His statement was not "made during a rapidly developing incident in circumstances reasonably negating premeditation." *Commonwealth* v. *Clary*, 388 Mass. 583, 589 (1983).[7] Paquette's statements to Foglietta were

---

[6]Foglietta described the declarant's demeanor in the following manner: Paquette was "sobbing, consistent with someone who was in pain." He was "sobbing versus excited. He wasn't jumping around. . . . He was not physically excited. He was more or less in pain. He was upset. He wasn't jumping around. That's why I used sobbing. You know, he was in trauma, in pain, and he was talking calmly." On cross-examination, Foglietta agreed that his "primary observation" was that Paquette was "in physical pain." However, throughout the interview, Paquette's "demeanor was calm." On cross-examination before the jury, Foglietta agreed that Paquette had been able to "speak clearly and in a lucid manner."

[7]We have not found, nor have we been referred to, any cases in which statements of an adult elicited at a police interview have been admitted as an excited utterance after a longer period than found in this case. Special considerations found in children's statements, see *Commonwealth* v. *Brown*, 413 Mass. at 695-696, do not pertain here.

not the unrehearsed statements made by a witness before he had time to fabricate or reconstruct events from a faulty memory. Contrast *Commonwealth* v. *Fuller*, 399 Mass. at 682-683 & n.8.

The ultimate question is whether reversal is required. We conclude in these circumstances that it is. Unlike cases where the accused had an opportunity to cross-examine the declarant-victim about out-of-court statements erroneously admitted as excited utterances, see *Commonwealth* v. *Whelton*, 428 Mass. 24, 27 (1998); *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. at 555-556, there was no such opportunity here. Since the Commonwealth could not carry its burden of proof without Paquette's statements, their erroneous admission in evidence created a substantial risk of a miscarriage of justice.

In view of our disposition of this claim, we need not address the defendant's remaining claims of error, nor her claim of ineffective assistance of counsel. The defendant's convictions on all the charges (including the assault and battery charge placed on file, see *Commonwealth* v. *Souza*, 42 Mass. App. Ct. 186, 187 n.1, 193 [1997]), are reversed.

*Judgments reversed.*

*Verdicts set aside.*

*Judgments shall enter for the defendant.*