802 So.2d 869 (2001)
STATE of Louisiana
v.
Monte WHITE.
No. 2000-KA-1740.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2001.
*870 Harry F. Connick, District Attorney, Anne M. Dickerson, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, Counsel for Defendant/Appellant.
*871 Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY.
Judge MICHAEL E. KIRBY.

STATEMENT OF THE CASE:
On September 4, 1997, the defendant was charged by grand jury indictment with one count of first degree murder. La. R.S. 14:30. He was arraigned and pled not guilty September 18, 1997. Trial began before a twelve member jury June 18, 1998. Prior to opening statements, a hearing on a defense motion for the psychiatric examination of a State witness was held and denied. At the conclusion of trial, the defendant was found guilty as charged. The jury could not reach a decision during the sentencing phase of the trial. On July 15, 1998, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He filed a motion for appeal.

FACTS:
On July 22, 1997, Mark Lewis and Raymond Smith were shot. Smith died. In response to police questioning in the ambulance as he was being taken from the scene, Lewis said that "Monte" shot him. At the hospital, Detective Richard Williams questioned Lewis; and Lewis said that the perpetrator was named Monte, was twenty years old, drove a four door Cutlass, and lived on Andry Street. The defendant was arrested. On July 25, 1997, Lewis was shown a photographic lineup at the hospital and identified the defendant.
At trial, Lewis said that he knew the defendant and had seen him earlier on the evening of the shooting. Immediately prior to the shooting, Lewis was walking with Smith. The defendant and another man walked up from behind a parked car and began shooting. Lewis identified the defendant at trial. Lewis admitted to convictions for theft and possession of cocaine. He also said he had taken cocaine the day of the shooting.
The defense was misidentification. A friend of the defendant said that he saw him at a movie the night of the crime. The defendant's mother said he had dropped his children off on the way to the movie and picked them up later. A pair of brothers who were neighbors of the defendant said they were driving when they heard the gunshots and saw two people running from the scene, both of whom were too short to be the defendant. The defendant's girlfriend said they were at the movie during the crime.
The defendant took the stand and said he was at the movie. He admitted to prior convictions including crack possession. He said that he had seen Lewis earlier in the evening and that Lewis was looking for drugs.
The defendant's ex-girlfriend and mother of one of his children took the stand and said that she had known the defendant to carry a gun in the past and that he had shot at her.

ASSIGNMENT OF ERROR ONE:
As noted above, the defendant moved for the psychiatric evaluation of Lewis prior to trial. He attempted to introduce evidence that two weeks prior to trial, Lewis had threatened to stab his mother and infant sister and that he was suicidal. The trial judge denied the motion, and ruled the evidence inadmissible. In particular, the judge stated:
I have talked to Mr. Lewis in chambers and I'm satisfied that his memory of the events of that evening are not clouded by anything that may have happened subsequent, and I'm also satisfied that the incident in which there was an allegation *872 that there may have been some suicidal tendencies is not in any way related to the events of July 22nd and that incident is completely unrelated to any issue of credibility for this witness to testify today.
The defendant cites La. C.E. art. 607[1] in support of his argument. The article establishes the right to attack and support credibility. However, the defendant had ample opportunity to cross-examine the witness in this case, and did so. Moreover, there was testimony by three different officers on the scene that Lewis was "in full faculties" and "coherent" in the ambulance; and "conscious, responsive" in the hospital. Lewis himself said he was conscious during both instances. As to his trial identification, the jury heard ample evidence that Lewis underwent brain surgery and had part of his brain removed as a result of this crime. From a reading of the transcript, Lewis's testimony appears to have been clear and lucid. He was confident of his identification at trial, and confident of his prior identifications. The jury, who was able to witness his demeanor, was free to determine the extent of Lewis's lucidity.
As to the incident regarding the alleged attempted stabbing of Lewis's mother and sister, the judge essentially ruled that evidence irrelevant. La. C.E. art. 401.[2] Clearly, Lewis's alleged attack on his family had nothing to do with the facts of this case.
There was no error. This assignment is without merit.

ASSIGNMENT OF ERROR TWO:
The defendant argues the trial court impermissibly allowed hearsay testimony in violation of La. C.E. art. 801. Specifically, the defendant complains of the statements Lewis made to the police officers identifying the defendant in the ambulance and again at the hospital.
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. Exceptions to the hearsay rule are set out in La. C.E. art. 803. The statements in this case were allowed in under the excited utterance exception setout in La.C.E. art. 803(2): "A statement *873 relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
This court has stated on the issue of the time span between the event and the utterance:
[The excited utterance exception] requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought processes inoperative. State v. Reaves, 569 So.2d 650 (La.App. 2nd Cir.1990), writ den., 576 So.2d 25 (La.1991). Furthermore, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978).
In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. State v. Reaves, supra. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and a restoration of a reflective thought process. State v. Henderson supra.

Other factors which may indicate that a statement was the result of a reflective thought, but which do not automatically justify exclusion, are (1) evidence that the statement was self serving or made in response to an inquiry; expansion of the excited utterance beyond a description of the event and into past or future facts; and proof that, between the event and the statement, the declarant performed tasks requiring reflective thought process. State v. Baker, 582 So.2d 1320, 1331 (La.App. 4th Cir.1991).
In this case, the statements made in the ambulance were made immediately after the witness had suffered five gunshot wounds: two to the head and one to the neck. The statements made in the hospital were made immediately after the doctor and the police officer told the witness that he would not live. The wounds were so grave that at the time of trial, the witness remained paralyzed on his left side and unable to feed himself. Thus, in both situations, when the witness made the complained of statements, he was aware of his impending death; and his statements were properly admitted because they were made after an event sufficiently startling to render his normal reflective thought processes inoperative.
The trial court did not err in admitting the statements.
This assignment is without merit.

ASSIGNMENT OF ERROR THREE:
The defendant argues the trial court allowed the state to introduce impermissible evidence of other crimes in violation of La. C.E. art. 404.[3] The defendant *874 complains that the court should not have admitted evidence that 1) he had been arrested for crack in the past and 2) had shot at an ex-girlfriend. In neither case did the defense object, precluding raising the issue for the first time on appeal. La.C.Cr. P. art. 841.
Even if the defendant had objected, the evidence was properly admitted. The defendant admitted on direct examination that he saw Lewis on the day of the crime, and that he told him, "I don't do nothing no more." He also admitted on direct to possession of a "dangerous" substance. The defendant therefore put evidence of his past drug involvement before the court. Thus, the State was entitled to elicit testimony from him regarding these events. The defendant explained his direct testimony on cross when he said that he had sold crack in the past but had changed his life, and that was the reason he did not have drugs on him when Lewis asked him for some.
As to the incident involving the ex-girlfriend, the defendant testified that he had never possessed a gun, and that the only time he had ever held one was in a pawn shop. The State was thus entitled to refute this testimony.
This assignment is without merit.

ASSIGNMENT OF ERROR FOUR:
The defendant argues the trial court improperly overruled the defense's objection to improper closing argument by the State in violation of La.C.Cr.P. art. 771.[4]
*875 During the defense's closing argument, counsel argued that the State should have tested for powder burns. In rebuttal, the State argued that it is not required to show powder burns and pointed out that the defendant was arrested the day after the crime when powder burns would have no longer been present. The State continued to argue, over the defense's objection, that the defense had put forth no evidence that the police could have found powder burns the day after the crime. The defendant now argues that the State shifted the burden of proof.
La.C.Cr.P. art. 774 provides in pertinent part: "The State's rebuttal shall be confined to answering the argument of the defendant." In this case, the State was properly arguing in rebuttal an issue the defense raised in closing: that is, the State was under no obligation to present evidence of powder burns. The argument was totally proper.
This assignment is without merit.

CONCLUSION:
For the foregoing reasons, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] La. C.E. art. 607 provides:

A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
[2] La. C.E. art. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
[3] La. C.E. art. 404 provides:

A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible; or
(b) Evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) Character of witness. Evidence of the character of a witness, as provided in Articles 607, 608, and 609.
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible; provided that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible.
[4] La.C.Cr.P. art. 771 provides:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.