## COMMONWEALTH *VS.* FREDERIC JOYNER.

No. 00-P-739.

Suffolk. November 19, 2001. - July 10, 2002.

Present: PERRETTA, DREBEN, & GELINAS, JJ.

*Evidence,* Spontaneous utterance, Failure to produce witness. *Practice, Criminal,* Instructions to jury.

Ample evidence in the record of a criminal trial supported the judge's ruling that certain statements made by the victims, introduced by the Commonwealth through police officers, were admissible as excited utterances, and the judge properly left, as a question for the jury, the weight to be accorded the statements. [414-417]

At a criminal trial, the judge did not err in declining to give a missing witness instruction with regard to two potential witnesses for the Commonwealth, where the record demonstrated that, despite the Commonwealth's efforts, the witnesses could not be located and brought forward to testify at trial. [417-418]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on February 22, 1999.

The case was tried before *Sarah B. Singer,* J.

*Katherine M. Schelong* for the defendant.

*Louis N. Schulze, Jr.,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. Frederic Joyner was convicted of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) by a jury of six in the Dorchester District Court. The victim, Derek Moore, did not testify, nor did his girlfriend, Joyce O'Neil. Neither appeared at trial, despite efforts of the Commonwealth to locate them and to require their attendance by a subpoena. On his appeal, the defendant argues that the trial judge erred in permitting the jury to hear certain statements made by Moore and O'Neil, introduced by the Commonwealth through police officers, as excited utterances. He also claims that the trial judge

committed reversible error in denying his request for a "miss-ing witness" instruction at the close of trial. We affirm the conviction.

At a hearing in limine with regard to the admissibility of the statements, the judge was warranted in finding the following facts. Dispatched to the scene of a disturbance, Officer Shawn Marando of the Boston police department soon[1] encountered Moore running down Fessenden Street. Moore was screaming, with blood on his hand and face. According to Marando, Moore was "really afraid" and "shaken up." Moore related to Ma-rando that he and O'Neil had gone to 30 Fessenden Street and knocked on the door, whereupon the defendant and his brother, Chico Joyner (Chico), came out and chased them away from the house with a baseball bat and a knife. Moore stated that he was caught and beaten with fists, feet, and the bat. Moore then told Marando that he escaped the beating and ran to his car and that the defendant followed and smashed the car window with the bat. Moore, continuing his conversation with the officer, stated that he then ran from the vehicle and encountered Marando. Following this initial conversation with Moore, Marando and other officers went to 30 Fessenden Street and arrested the defendant and Chico. Moore returned to 30 Fessenden, where he was treated by emergency medical technicians (EMTs), who had arrived with an ambulance. After treatment, some ten minutes after the attack, Moore had further conversation with the officers. He reiterated the original description of events as given to Marando. O'Neil, now also present at 30 Fessenden Street and participating in conversations with the police, was also shaken up and angry. O'Neil stated that she had been hit on the arm by a beer bottle thrown by Chico and that she had observed the defendant kick Moore and hit him with the bat. Neither knife nor bat were recovered by the police after a search of the premises and outside area at 30 Fessenden Street. At the hearing in limine, and on appeal here, the defendant's attorney contends that, at the time of the incident, there were warrants outstanding for Moore, that Moore had a lengthy criminal rec-

---

[1]Testimony has it at about two minutes after the dispatch.

ord, and that Moore was not a truthful person.[2] As Moore was cognizant of the outstanding warrants and would want to evade arrest, his statements, the attorney argued, were unreliable and should be excluded regardless of whether they qualified as excited utterances. At the hearing in limine, the attorney also set the stage for requesting the missing witness instruction, suggesting that he should be allowed to comment on the absence of Moore and O'Neil should they fail to appear at trial.

1. *The excited utterances.* Trial judges are given broad discretion[3] in determining whether a statement qualifies as an excited utterance, admissible as an exception to the rule barring hearsay and thus frustrating a defendant's right of confrontation.[4] See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 223, 224 (1973). The matter is one "peculiarly within the judge's province and only in clear cases . . . of an improper exercise of discretion should his ruling be revised." *Rocco* v. *Boston-Leader, Inc.,* 340 Mass. 195, 197 (1960).

In considering whether to qualify statements as admissible, the trial judge must determine whether, under the particular circumstances of the case, the statement "was spontaneous to a degree which reasonably negated premeditation or possible fabrication and . . . tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Crawford,* 417 Mass. 358, 362 (1994), quoting from *Black* v. *Springfield St. Ry.,* 6 Mass. App. Ct. 553, 556 (1978). See *Commonwealth* v. *King,* 436 Mass. 252, 254 (2002). At bottom, the determination is based on whether the statement "[was] made [while the declarant] was under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and thus . . . has sufficient indicia of reliability." *Commonwealth* v. *Zagranski,* 408 Mass. 278, 285 (1990). Our cases identify certain circumstances that the trial judge might consider

---

[2]Except for reference to the criminal record and the warrants, the record is silent as to the source of information concerning Moore's reputation for veracity.

[3]For an excellent discussion of the concept of judicial discretion, see *Long* v. *Wickett,* 50 Mass. App. Ct. 380 (2000).

[4]One commentator suggests that the trial judge have absolute discretion in this regard, a position which we have declined to follow. See 6 Wigmore, Evidence § 1750 (3d ed. 1940).

in determining whether a statement meets this test. They include the following: "the degree of excitement displayed by the person making the statements, *Commonwealth* v. *McLaughlin,* [*supra* at 222]; whether the statement is made at the place where the traumatic event occurred or at another place, see *Commonwealth* v. *Zagranski,* [*supra* at 284-286]; the temporal closeness of the statement to the act it explains,[5] see *Commonwealth* v. *Giguere,* 420 Mass. 226, 233-234 (1995); and the degree of spontaneity [shown by the declarant]. See *Commonwealth* v. *Hampton,* 351 Mass. 447, 449-450 (1966); *Commonwealth* v. *Burden,* 15 Mass. App. Ct. 666, 676-677 (1983)." *Commonwealth* v. *Hardy,* 47 Mass. App. Ct. 679, 682 (1999). The circumstances enumerated are neither exhaustive nor mandatory; rather, the judge is to consider the particular circumstances in each case. See *ibid.* Further, the judge should not inquire as to whether the statement is in fact credible. See *Commonwealth* v. *King, supra* at 255-256. That task falls to the finder of fact. See *ibid.* The trial judge need determine only whether the fundamental requirements for admission have been met, i.e., whether the circumstances of the statement's making are such as reasonably negate premeditation. Once admitted, the credibility of the statement may, of course, be controverted by other evidence. *Commonwealth* v. *King, supra* at 256-257. Here, the trial judge had before her ample circumstances supporting her ruling that the statements were admissible. Moore's first statements were made within moments of the event, as Moore was intercepted by a police officer while fleeing the scene.

---

[5]Proximity to the event as a factor is distinguished from the older concept of res gestae. Under that doctrine, a statement was deemed admissible as an exception to the hearsay rule if it was part of the event itself, that is, part of some material fact or act of the event. Under the theory of res gestae, any statement made that was not a part of some material fact or act of the incident, no matter how close in time, was deemed inadmissible. See *Commonwealth* v. *Chance,* 174 Mass. 245, 250 (1899). The test now is whether the statement is "spontaneous to a degree which . . . negate[s] premeditation or possible fabrication. *Commonwealth* v. *Fuller,* 399 Mass. 678, 682 (1987), quoting from *Blake* v. *Springfield St. Ry.,* 6 Mass. App. Ct. 553, 556 (1978)." *Commonwealth* v. *Hardy, supra.* Temporal proximity is a factor that may be considered by the trial judge, see *Commonwealth* v. *Giguere, supra* at 223, but the statement need not be contemporaneous with the event, see *Commonwealth* v. *Crawford, supra* at 362.

Moore was described as screaming, injured, bleeding, and excited, all factors indicating that he was under the influence of the traumatic event. His statement tended to "qualify, character-ize, and explain the underlying event." *Commonwealth* v. *Stroyny*, 435 Mass. 635, 643 (2002). The fact that Moore's statements here, and the subsequent statements of Moore and O'Neil, were made in response to questions by the officers does not render them inadmissible. See *Commonwealth* v. *Fuller*, 399 Mass. 678, 682-683 (1987). Further independent evidence of the EMT on the scene, regarding the type of wounds suffered by Moore and his demeanor, was consistent with his being in a traumatized state. Moore repeated his statement at the ambulance some ten minutes after the event, at which time he was still described as injured (with a large visible "knot" or bump on his head), and excited and shaken up, though less so than at the time of the conversation with Officer Marando. Moore's girlfriend, O'Neil, corroborated his description of events, add-ing only the additional fact that she had been struck once on the arm.[6] She was described at this time as a little shaken up but more angry. On evidence of her demeanor and of the proximity to the time and place of the event, the trial judge was warranted in determining, in her discretion, that O'Neil, as well, was under the influence of the traumatic event and that her state-ments also were admissible as excited utterances.

The defendant argues that Moore's evidence should have been excluded because he had a motive to lie since he was wanted on outstanding warrants and he had a criminal record. We conclude that motive to lie goes to the weight to be ac-corded the statements, rather than to their admissibility, and that a victim's motive or lack thereof should play no part in the calculus of determining admissibility of the statements. Mc-Cormick, Evidence § 270, at 198-199 (5th ed. 1999), explains as follows: "[t]he Federal Rules[] covering hearsay exceptions for spontaneous statements . . . make no special provision for self-serving statements. . . . The rules give no authorization to

---

[6]The attack on O'Neil was allegedly perpetrated by Chico, and the defendant was not charged with any crime involving O'Neil.

such considerations . . . ."[7] See *People* v. *Fratello*, 92 N.Y. 2d 565, 571 (1998), cert. denied, 526 U.S. 1068 (1999) (bias not a factor in determining whether a declaration is an excited utterance). See also 6 Wigmore, Evidence §§ 1745-1764 (Chadbourn rev. ed. 1976) (motive to lie not mentioned as a consideration for admissibility of a spontaneous utterance; reliability of spontaneous utterance derives from fact that startled, unexpected nature of statement divorces the statement from deliberative thought or reason). But see McCormick, Evidence § 270, at 199 ("Judicial consideration of credibility is not theoretically prohibited in determining an issue of preliminary-fact-finding of the type involved in admitting or excluding hearsay").[8] See *United States* v. *Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000) ("[b]ased on the lapse of time, age, *motive to lie*, and known actions of [the declarant], we are wholly unconvinced these statements were excited utterances" [emphasis added]); *Louisiana* v. *White*, 802 So. 2d 869, 873 (La. Ct. App. 2002) (that a statement is self-serving is a factor in determining whether that statement was the "result of reflective thought").

On the basis of all circumstances, the trial judge was warranted, in her discretion, in deeming the statements admissible, as "being spontaneous to a degree which reasonably negated premeditation or possible fabrication," *Commonwealth* v. *Crawford*, 417 Mass. at 362, leaving to the jury whether to credit the statements, and if credited, the weight they would carry in the calculus of deliberation. The trial judge here considered and gave appropriate weight to all material circumstances regarding admissibility, and her decision was within her broad discretion.

2. *The missing witness instruction.* We also conclude that there was no error in refusing to give a "missing witness" instruction with regard to the unavailability of Moore and O'Neil at trial. The trial judge is vested with substantial discretion in this area as well. "It is the judge's role . . . to determine whether an inference adverse to the non-calling party is war-

---

[7]Federal Rule of Evidence 803(2) is consistent with Massachusetts common law. See *Commonwealth* v. *Carrasquillo*, 54 Mass. App. Ct. 363, 368 (2002); Liacos, Brodin, & Avery, Massachusetts Evidence, § 8.16, at 555 (7th ed. 1999).

[8]McCormick, however, goes on to explain that the Federal rule does not "authorize such considerations and that the legislative indent appears to be otherwise." *Ibid.*

ranted in the circumstances [of the case]. . . . The determination called for is an exercise of judgment, reversible only if manifestly unreasonable." *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 244 (1990). When "a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party." *Commonwealth* v. *Shatvet*, 23 Mass. App. Ct. 130, 134 (1986). The defendant's claim of error founders on the first requirement of the rule. Based upon representations that the Commonwealth had issued subpoenas for the witnesses, had made phone calls, had spoken to people in Moore's putative household, and had sent cruisers to the city of Lynn in an attempt to locate Moore and O'Neil, the trial judge was well within her discretion when she determined that neither Moore nor O'Neil could be "located and brought forward." Contrast the lesser effort made by the Commonwealth set out in *Commonwealth* v. *Florek*, 48 Mass. App. Ct. 414 (2000).

*Judgment affirmed.*