STATE OF LOUISIANA      *      NO. 2022-KA-0710

VERSUS      *

                 COURT OF APPEAL

TREMAINE WILLIAMS      *

                 FOURTH CIRCUIT

     *

                 STATE OF LOUISIANA

         * * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 551-181, SECTION "DIVISION D"
Judge Kimya M. Holmes,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Paula A. Brown)


JASON R. WILLIAMS
District Attorney
Parish of Orleans
BRAD SCOTT
Assistant District Attorney
Chief of Appeals
619 South White Street
New Orleans, LA 70119

       COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE


Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

       COUNSEL FOR DEFENDANT/APPELLANT

                         **AFFIRMED**
                         **May 15, 2023**

*RML*

*JCL*

*PAB*

This is a criminal case.  The appellant, Tremaine Williams, appeals his convictions of aggravated battery and possession of a firearm by a convicted felon and his sentences on each conviction.  For the following reasons, we affirm the convictions and sentences.

## PROCEDURAL AND FACTUAL BACKGROUND

This case arises from a fight between Mr. Williams and Freddie Scott.  During the fight, Mr. Williams shot Mr. Scott in the leg.  Mr. Scott survived and the State charged Mr. Williams with attempted second degree murder and possession of a firearm by a convicted felon.  Mr. Williams pleaded not guilty and proceeded to trial by jury.  Before trial, the State filed a motion to invoke the firearm sentencing provision, La. C.Cr.P. art. 893.1, *et seq.*[1]  The district court granted the State's motion.

Mr. Williams filed several motions in advance of trial, including a motion *in limine* to exclude evidence and testimony under the Confrontation Clause of the Sixth Amendment of the United States Constitution and motions *in limine* to exclude certain hearsay evidence.  Mr. Williams argued that audio recordings of 911 calls and surveillance video from a Regional Transit Authority ("RTA") bus

---

[1] The firearm sentencing provision mandates, in pertinent part, a longer sentence "if the finder of fact finds beyond a reasonable doubt that a firearm was actually used or discharged by the defendant during the commission of the felony for which he was convicted, and thereby caused bodily injury."  La. C.Cr.P. art. 893.3(D).

1

were inadmissible hearsay and violated the Confrontation Clause. The district court denied Mr. Williams' motions *in limine*.

During opening statements at trial, defense counsel did not deny that Mr. Williams shot Mr. Scott; rather, counsel asserted that Mr. Scott initiated a fight with Mr. Williams and drew a gun. Defense counsel claimed Mr. Williams was forced to wrest away Mr. Scott's gun and fire at him in self-defense.

The State's key fact witness—Jamarious Scott—disputed Mr. Williams' self-defense claim. Jamarious Scott is a cousin of Freddie Scott. He was familiar with Mr. Williams because Mr. Williams was dating Freddie Scott's sister, Latoya Scott. On the day of the shooting, Jamarious Scott was in his car parked outside of the family home shared by Freddie and Latoya Scott, as well as Kim Scott, their mother, and Latisha Scott, their other sister. Jamarious Scott was making a phone call in his car when he heard a commotion from inside the house. He then saw Mr. Williams and Freddie Scott exit the house in the midst of a fight. Jamarious Scott witnessed Freddie Scott strike Mr. Williams, causing Mr. Williams to stumble before drawing a gun and shooting at Freddie Scott. After the first gunshot, Freddie Scott immediately fled across the street toward an AutoZone parking lot and Mr. Williams followed, firing two more shots. After the second gunshot, Jamarious Scott noticed Freddie Scott limping as he continued to flee and deduced that he had been hit by the second shot. Jamarious Scott heard a third and final gunshot as Mr. Williams followed Freddie Scott across the street.

Jamarious Scott testified that he followed the two across the street to the AutoZone parking lot but had to wait for a bus to pass. After the bus passed and as he approached the parking lot, Jamarious Scott witnessed Freddie Scott lying on the ground as Mr. Williams stood over him, pointing the gun at Freddie Scott.

2

Latisha Scott was already in the parking lot standing between the two, screaming at Mr. Williams not to shoot her brother. Mr. Williams then returned to the Scotts' house and fled in a car with Latoya Scott. Jamarious administered first aid to Freddie Scott and remained at the scene until law enforcement arrived. During police questioning, Jamarious Scott identified a photograph of Mr. Williams as the perpetrator of the shooting.

The State called Detective Shonndell Fields, who investigated the shooting. Detective Fields arrived at the scene shortly after the shooting, while Freddie Scott was still lying on the ground bleeding from the gunshot wound to his leg. She remained on the scene interviewing witnesses and supervising officers collecting evidence. During further investigation, Detective Fields recovered video footage from the RTA bus that had passed the Scotts' home during the shooting. The video depicted one man holding a firearm and chasing another man across the street in front of the bus. Detective Fields testified that the two men were Mr. Williams and Freddie Scott and they were running from the Scotts' house across the street to the AutoZone parking lot. Detective Fields also testified that, during her investigation, she conducted photographic identifications with Jamarious, Kim, and Freddie Scott. All three identified Mr. Williams as Freddie Scott's shooter.

The State also called New Orleans Police Sergeant Mark McCourt, whose job duties included acting as the custodian of records for the police department. Sergeant McCourt authenticated audio recordings of three 911 calls placed immediately after the shooting requesting police and medical assistance. These recordings were played for the jury.

The jury found Mr. Williams guilty of aggravated battery with a firearm, a responsive verdict to the attempted second degree murder charge, and made the

3

factual finding, pursuant to the firearm enhancement sentence, that Mr. Williams used a firearm in commission of the aggravated battery. The jury also found Mr. Williams guilty of possession of a firearm by a convicted felon. The district court sentenced Mr. Williams to ten years for the aggravated battery conviction and fifteen years without the benefit of probation, parole, or suspension of sentence for the felon in possession of a firearm conviction, with both sentences to run concurrently.

**DISCUSSION**

Mr. Williams assigns two errors to the district court: first, he argues that the district court made several evidentiary errors throughout the trial; second, he argues that his sentences are excessive.[2]

I.    *Evidentiary Issues*

Mr. Williams contends that admission of certain evidence during trial violated the Louisiana Code of Evidence and the Confrontation Clause of the Sixth Amendment.

Mr. Williams argues that the audio recordings of 911 calls reporting the shooting contained inadmissible hearsay.[3] The bulk of the 911 calls—placed immediately after the shooting—consisted of statements pertinent to addressing and resolving the ongoing emergency, including the location of the shooting, the nature of the injuries, the number of persons involved, and whether the shooter was

---

[2] Mr. Williams also assigns error to the admission of testimony from Detective Fields concerning his pre-arrest silence, which Mr. Williams contends violated his Fifth Amendment right to remain silent. Because no objection was lodged, we do not address this assignment of error. La. C.Cr.P. art. 841(A).

[3] Mr. Williams also assigns error to the district court's admission of 911 incident reports— documents automatically generated after a 911 call is logged. Because no objection was lodged, we do not address this argument. La. C.Cr.P. art. 841(A).

still in the vicinity. Mr. Williams takes no issue with those portions of the 911 calls but argues that statements describing the shooter's race, clothing, and vehicle, and statements recounting limited facts about the shooting, are inadmissible hearsay.[4] The State responds that Mr. Williams failed to lodge a contemporaneous objection to admission of the 911 calls at trial and thus waived his right to raise it on appeal. Although we find the issue was preserved,[5] we find no error in the district court's admission of the 911 calls.

Article 803 of the Louisiana Code of Evidence provides exceptions to the general rule against hearsay, regardless of the declarant's availability. Among these exceptions are excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." La. C.E. art. 803(2). In *State v. Jackson*, 15-0222 (La. App. 4 Cir. 3/16/16), 191 So.3d 63, this court summarized the excited utterance exception as follows:

> For the excited utterance exception to the hearsay rule to apply, "the event must be sufficiently startling to render the declarant's normal reflective thought process inoperative, and the statement must be a spontaneous reaction to the event and not the result of reflective thought." *State v. Bernard*, []14-0580, p. 20 (La. App. 4 Cir. 6/3/15), 171 So.3d 1063, 1077, citing *State v. Henderson*, 362 So.2d 1358, 1362 (La. 1978). The most important factor in determining whether a statement was made under the stress of a startling event is the time span between the event and the statement. *State v. Dalton*, 99-0902, p. 4 (La. App. 4 Cir. 3/29/00), 759 So.2d 180, 183. Courts have also considered whether the statement is self-serving or in response to an inquiry; whether the statement expands beyond a description of events to include past or future facts; and whether the declarant performed tasks requiring reflective thought between the event and the statement.

---

[4] In his appellate brief, Mr. Williams explicitly abandoned his argument, raised in the district court, that admission of 911 audio and RTA bus video, discussed elsewhere in this opinion, also violated his rights under the Confrontation Clause.

[5] Mr. Williams filed a pretrial motion to exclude the 911 recordings, which the district court denied. Defense counsel noted his objection to the ruling and renewed his objection during trial when the 911 calls were introduced into evidence.

> *State v. Falkins*, []12-1654, p. 17 (La. App. 4 Cir. 7/23/14), 146 So.3d 838, 850; *State v. White*, []00-1740, p. 5 (La. App. 4 Cir. 11/21/01), 802 So.2d 869, 873. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and the restoration of a reflective thought process. *State v. Everett*, []11–0714, p. 17 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 620, citing *State v. Lee*, []01–2082, p. 12 (La. App. 4 Cir. 8/21/02), 826 So.2d 616, 626.

*State v. Jackson*, 15-0222, pp. 12-13, 191 So.3d at 70–71.

The statements at issue—made within minutes of the shooting—were each made by a witness in close vicinity of Mr. Williams firing multiple gunshots at Freddie Scott on a public street in broad daylight. By any measure, this event was sufficiently startling to render the witnesses' normal reflective thought processes temporarily inoperative. Moreover, the statements at issue—descriptions of the shooter's complexion, his clothes, and his vehicle, and brief accounts of the facts of the shooting—were not self-serving. Rather, they were in reply to an emergency responder's inquiries and did not expand beyond a mere description of events that had occurred moments earlier. Given the close proximity in time between the shooting and the statements; the factual, descriptive nature of the statements; and the lack of any apparent self-serving motive, we find these statements fall within the excited utterance exception to the hearsay rule. Accordingly, we find no error in the district court's admission of the 911 calls.

In a related argument, Mr. Williams argues that the district court erred in permitting testimony from Detective Fields regarding out-of-court identifications of Mr. Williams by Freddie Scott and Kim Scott. At trial, however, testimony regarding these out-of-court identifications was not elicited until defense counsel questioned Detective Fields about them on cross-examination. On redirect, the State then questioned Detective Fields regarding the results of the identification

procedure, drawing objections from defense counsel.  The district court overruled Mr. Williams' objections on the basis that he had opened the door during cross-examination.

"Once the defense opens the door in cross-examination on a subject it becomes a proper subject for redirect. . . . The defense may not approach a prohibited area . . . and then close the door to clarification by the State." *State v. Boys*, 19-0675, p. 24 (La. App. 4 Cir. 5/26/21), 321 So.3d 1087, 1107, *writ denied,* 21-00909 (La. 11/10/21), 326 So.3d 1245, *cert. denied,* 142 S.Ct. 1672, ---U.S. ---, 212 L.Ed.2d 580; (2022) (internal citations omitted); *see also* La. C.E. art. 611(D) ("[a] witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case.").  By delving into the out-of-court identifications by Kim and Freddie Scott and their out-of-court identifications on cross-examination, Mr. Williams opened the door to the State's examination concerning the results of those identifications on re-direct by the State. Accordingly, the district court did not abuse its discretion in permitting Detective Fields to testify to the out-of-court identifications by Kim and Freddie Scott.

Mr. Williams next argues that the district court erred in permitting Detective Fields to offer testimony commenting on a video she recovered from an RTA bus passing the Scotts' house at the time of the shooting.  The commentary alleged by Mr. Williams consisted of two statements.  First, after the State showed the video to the jury, Detective Fields simply described what the video depicted: one person pursuing another from the Scotts' house across the street to the AutoZone parking lot.  Detective Fields then identified the two people in the video as Mr. Williams and Freddie Scott.

Citing La. C.E. art. 602, Mr. Williams argues that, because she was not an eye-witness to the crime, Detective Fields lacked the necessary personal knowledge to testify to the events depicted in the RTA video. Article 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." La. C.E. art. 602. Detective Fields' testimony demonstrated that, through her investigation, she gained adequate personal knowledge of the scene of the shooting, the events of the shooting, and the persons involved to testify to the contents of the RTA video. The district court did not err in permitting Detective Fields to testify to the RTA video.

In sum, we find Mr. Williams' first assignment of error concerning the evidentiary issues unpersuasive.[6]

## II. Excessiveness of Sentence

Mr. Williams next contends that his sentences are constitutionally excessive. "The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed." *State v. Bradley*, 18-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So.3d 94, 99-100 (quoting *State v. Williams*, 15-0866, pp. 12-13 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 250). A sentence is excessive, even when it is within the applicable statutory range, if it is "grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering." *Bradley*, 18-0734, p. 8, 272 So.3d at 100 (internal quotation marks and citations omitted).

---

[6] In this assignment of error, Mr. Williams also claims the district court erred in permitting hearsay testimony concerning missing surveillance footage from the Scotts' home and hearsay testimony that Mr. Williams fled with Latoya Scott. The record reflects no hearsay testimony concerning missing surveillance footage nor did Mr. Williams object to testimony that Mr. Williams fled with Latoya Scott—to the contrary, defense counsel elicited this testimony. Accordingly, we do not address these arguments.

The jury found Mr. Williams guilty of aggravated battery and found that he had discharged a firearm in commission of the crime. The maximum sentence for aggravated battery is ten years imprisonment. La. R.S. 14:34. However, pursuant to the firearm enhancement provision of La. C.Cr.P. art. 893.3(D),[7] the minimum sentence for Mr. Williams' aggravated battery conviction was ten years imprisonment. The sentencing range for a felon in possession of a firearm is five to twenty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. La. R.S. 14:95.1. The district court's sentences—ten years for the aggravated battery conviction and fifteen years without the benefit of parole probation, or suspension of sentence for the felon in possession of a firearm conviction—were within the applicable statutory range for each conviction.

Although the district court did not articulate reasons for the sentences, in reviewing a claim that a sentence is excessive, "an appellate court generally 'must determine whether the district judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1,' and whether the sentence is warranted under the facts established by the record." *State v. Ravy*, 19-0144, p. 20 (La. App. 4 Cir. 9/11/19), 282 So.3d 289, 303-04 (quoting *State v. Boudreaux*, 11-1345, p. 5 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 885).

---

[7] La. C.Cr.P. art. 893.3(D) provides as follows:

> If the finder of fact finds beyond a reasonable doubt that a firearm was actually used or discharged by the defendant during the commission of the felony for which he was convicted, and thereby caused bodily injury, the court shall impose a term of imprisonment of not less than fifteen years nor more than the maximum term of imprisonment provided for the underlying offense; however, if the maximum sentence for the underlying felony is less than fifteen years, the court shall impose the maximum sentence.

Under the facts established by the record, we find the sentences were warranted, were proportionate to the seriousness of the offense, and were in compliance with the sentencing guidelines of La. C.Cr.P. art. 894.1. As previously noted, the district court was statutorily bound to impose a ten-year sentence on the aggravated battery conviction. Moreover, we find no error in the district court's fifteen-year sentence for the felon in possession of a firearm conviction. As noted by the district court, Mr. William used a firearm to inflict a serious injury to a victim who was running away. And Mr. Williams discharged the firearm multiple times in a public street and parking lot with pedestrians nearby in the middle of the day, demonstrating no regard for the safety of anyone in the vicinity. Considering the violent nature of the offense coupled with the danger to others presented by Mr. Williams' actions, we do not find Mr. Williams' sentences are excessive.

**DECREE**

For the foregoing reasons, we affirm Mr. Williams' convictions and sentences.

**AFFIRMED**